The STATE of Ohio, Appellee,

v.

KING, Appellant.

[Cite as *State v. King,* 151 Ohio App.3d 346, 2003-Ohio-208.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 2002–CA–2.

Decided Jan. 17, 2003.

Nick A. Selvaggio, for appellee.

Larry J. Denny, for appellant.

BROGAN, Judge.

{¶ 1} Defendant-appellant, William L. King, appeals from his conviction and sentence for theft based upon false information submitted on applications for food stamps and Medicaid benefits. King contends that the state did not present sufficient evidence to support the conviction. He also contends that his trial

counsel was ineffective. Finally, King contends that the trial court abused its discretion in imposing certain conditions as part of a community control sanction.

{¶ 2} From the record before us, we conclude that the state presented sufficient evidence to support the conviction. We also conclude that King was denied the effective assistance of counsel. We further conclude that the trial court abused its discretion in sentencing, and that the sentence must be modified. Accordingly, the judgment of the trial court is modified, and affirmed as modified.

I

{¶ 3} King became paralyzed in 1993. Since that time, he has received Social Security benefits for his disability. Additionally, his three minor children receive benefits from Social Security as a result of King's disability.

{¶ 4} In late 1998, while King was hospitalized for complications of his paralysis, hospital personnel initiated an application for him to receive benefits for his medical expenses. Mary Stanfel, an employee from the Champaign County Department of Job and Family Services ("the Department") visited King in the hospital, interviewed him, and filled out an application for benefits. King signed the application on December 3, 1998. The application indicated that King lived with one of his minor children, and that both King and his son received Social Security benefits. As a result of the application, King began to receive food stamps and Medicaid benefits. King's entitlement to continue receiving these benefits was redetermined on a yearly basis, at which time he was required to meet with a representative from the Department and fill out a "redetermination form." Redetermination forms were completed, and signed by King, in November 1999 and 2000. King was aware that he was required to report any change of circumstance affecting his right to benefits within ten days of its occurrence.

{¶ 5} In February 2001, the Department became aware that King's son, Cody, was residing with King's ex-wife rather than with King, which would decrease the amount of King's food stamp benefits. When confronted by Sherry Benston, an investigator for the Department, King insisted that Cody was still residing with him and that he was just attending school in the mother's district. However, it was verified that Cody had been residing with his mother in another school district as of August 2000.

{¶ 6} The Department then learned that King also received, as payee, the Social Security benefit checks for both of his minor daughters. The daughters, at all times pertinent to this case, resided with King's ex-wife. It was determined that King used these monies to pay his child support obligation for the girls, and that he listed the checks as his income in the divorce documents. It was further

determined that while King reported his child support obligation as an expense on his benefits eligibility forms, he did not report the checks as income. According to the Department, the income from these checks would have reduced the amount of his benefits. The Department computed that, based upon the unreported income and Cody's change of residence, King was overpaid $1,535 in Medicaid benefits and $3,333 in food stamps.

{¶ 7} King was indicted on one count of theft, in violation of R.C. 2913.02(A)(3). Following a jury trial, King was convicted as charged. The trial court sentenced King to community control sanctions for a period of three years. King was ordered to pay restitution in the amount of $4,868. As part of the "special conditions" of the community control sanctions, the trial court ordered King to perform 80 hours of community service and also required King to obtain and maintain a "conventional haircut" and to "remain clean shaven." From his conviction and sentence, King appeals.

## II

{¶ 8} King's first assignment of error states as follows:

{¶ 9} "There is a lack of sufficiency of evidence to support a conviction of appellant."

{¶ 10} King contends that the state did not present sufficient evidence to support his conviction for theft.

{¶ 11} In determining whether the evidence presented at trial is sufficient to support a conviction, a reviewing court must decide whether the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶ 12} The elements of theft by deception are set forth in R.C. 2913.02, which provides:

{¶ 13} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (3) By deception * * *."

{¶ 14} R.C. 2913.01(A) defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, * * * or by any other conduct, act, or omission that

creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

{¶ 15} Thus, the state was required to prove that King, with purpose to deprive the Department of property, knowingly obtained public assistance benefits by deception, by deceiving, or causing the Department to be deceived by any false or misleading representation, by withholding information, or by any conduct, act, or omission that created or perpetuated a false impression.

{¶ 16} There is evidence in the record that King failed to correctly report his income at the time he signed the original application or at the time he signed his redetermination applications. Additionally, there is evidence that he failed to report the change in residence of his son, even when confronted by the Department with the issue. There is evidence that he was aware of the need to report his income from all sources and any change in his son's residency. The state introduced evidence that King obtained benefits after failing to be truthful about his income and his son's residency, and that the Department relied upon the information provided by King. Therefore, we conclude that the state presented sufficient evidence to support King's conviction for theft.

{¶ 17} The first assignment of error is overruled.

### III

{¶ 18} The second assignment of error presented by King is as follows:

{¶ 19} "Appellant was denied effective assistance of counsel by her failure to seek an instruction on mistake or accident."

{¶ 20} In support of his claim that defense counsel was ineffective at trial, King contends that counsel failed to seek jury instructions on "mistake and accident" with regard to the issue of the social security benefits checks which he received as payee for his daughters.

{¶ 21} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 142, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. Assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. Id. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.

{¶ 22}   In this case, King testified that he asked Stanfel whether he needed to report his daughters' Social Security checks as income, and was told that he did not.   Therefore, we conclude that King presented evidence upon which a jury arguably could find that his failure to report the Social Security checks as income was the product of a mistake.   Given that there was evidence presented regarding mistake, we find that trial counsel's performance fell below the requisite standard for failing to request an instruction on mistake with regard to whether King was required to report the Social Security checks, and that King was prejudiced thereby.

{¶ 23}   To the extent that this argument may be intended to include a claim that King was entitled to an instruction on mistake with regard to the issue of whether he failed to inform the Department that Cody had moved out of his house, we note that our review of the record reveals no evidence to support such an instruction with regard to this claim.

{¶ 24}   Given that trial counsel failed to request a relevant jury instruction which was merited by the evidence presented, we conclude that trial counsel's performance was deficient.   However, given that King was properly convicted with regard to the portion of the charge that found that he failed to report that Cody had moved out, and that he was overpaid $3,333 in food stamps, the conviction may stand as this amount is sufficient to support the conviction. Accordingly, the second assignment of error is sustained in part.

## IV

{¶ 25}   King's third assignment of error provides:

{¶ 26}   "The trial court's sentence with reference to hair-cuts and shaving are [sic] unconstitutional and over-broad."

{¶ 27}   King contends that the trial court's orders that he get a conventional haircut and remain clean-shaven are unconstitutional.   He also claims that the order requiring him to perform 80 hours of community service is invalid, because it assumes that he would be capable of performing community service despite the fact that he is a paraplegic.

{¶ 28}   A review of the sentencing transcript reveals that the trial court ordered King to get a "conventional haircut" and to remain clean shaven to "change how [King] views himself and change how others view [him]."   As the state notes in its brief, we have previously addressed exactly this issue with the Champaign County Court of Common Pleas in *State v. Alexander* (Oct. 6, 2000), Champaign App. No. 2000 CA 6, 2000 WL 1475578, wherein we held:

{¶ 29} "[T]he trial court abused its discretion in requiring [the defendant] to be clean shaven during his probationary period as the condition bore no relation to his rehabilitation, bears no relationship to the [theft] charge of which he was convicted, nor does it relate to conduct which is criminal. The condition, in short, 'unnecessarily' impinges on the defendant probationer's liberty."

{¶ 30} With regard to his claim that the order of community service is invalid, King contends that the sentencing order is not clear because it fails to recognize that he is not capable of performing all types of service given his disability. We note that the transcript of the sentencing hearing specifies that the order of community service will be arranged based upon King's physical limitations. Therefore, we find this argument to be without merit.

{¶ 31} The third assignment of error is sustained in part.

V

{¶ 32} King's first assignment of error having been overruled and his second and third assignments of error having been sustained in part, the judgment of the trial court is modified by striking from the special conditions of community control the orders "that Defendant shall have no facial hair and shall remain clean shaven" and "shall get a conventional haircut and keep it that way." The judgment is also modified so that the order requiring King to pay restitution is reduced by $1,535 (the amount of the overpayment for Medicaid benefits), from $4,868 to the amount of $3,333 (which is the amount that King was overpaid for food stamps). As modified, the judgment of the trial court is affirmed.

Judgment affirmed.

GRADY and FREDERICK N. YOUNG, JJ., concur.