OPINION.
{¶ 1} This case is before us on Joseph M. Schlecht's appeal from revocation of his community control and imposition of the original sentence. Schlecht pled guilty on July 1, 2002, to selling $50 worth of marijuana, which was a fifth degree felony. The trial court then imposed three years of community control, with various requirements, including successful completion of a program at West Central Community Correctional Facility (WCCCF). In the sentencing entry, the court indicated that a twelve-month prison sentence would be imposed if Schlecht failed to comply with the community control conditions.
 {¶ 2} After Schlecht failed to complete the WCCCF program, the court held a revocation hearing in December, 2002, and imposed a twelve month prison sentence. Schlecht remained in jail pending appeal, until we granted a stay of execution in May, 2003. Our calculations indicate that Schlecht has about 78 days left to serve on the original sentence.
 {¶ 3} On appeal, Schlecht raises the following assignments of error:
I. The trial court erred in revoking Defendant-Appellant's community control.
II. The trial court erred in failing to sentence Defendant-Appellant to the minimum sentence of six months.
III. The trial court erred in sentencing Defendant-Appellant to the maximum sentence of twelve months.
 {¶ 4} After considering the record and applicable law, we find no merit to the first assignment of error. The second and third assignments of error have merit and will be sustained. The effect of our decision is that the revocation of community control will be affirmed, and the sentence will be modified to a six month sentence.
 I {¶ 5} Before addressing the first assignment of error, we should mention a matter we noticed while reviewing the record. Specifically, some "special conditions" the court imposed for community control continues to violate rulings in prior cases. For example, the court ordered Schlecht to get a "conventional haircut," and keep it that way, and to "have no facial hair and remain clean-shaven." We have previously told the Champaign County Common Pleas Court on more than one occasion that these conditions bear no relationship to criminal conduct and "`unnecessarily impinge on the defendant probationer's liberty.'" Statev. King, 151 Ohio App.3d 346, 351-352, 2003-Ohio-208, at ¶ 29, quoting from State v. Alexander (Oct. 6, 2000), Champaign App. No. 2000-CA-6, 2000 WL 1475578.
 {¶ 6} Turning now to the merits of this appeal, we note that community control was revoked because Schlecht failed to successfully complete a program at WCCCF. Schlecht concedes that he did not complete the program, but claims the court failed to consider the effect of Schlecht's mental illness on his ability to comply with community control conditions. In addition, Schlecht points out that his conviction was for a minor offense and did not threaten public safety.
 {¶ 7} The right to continue on community control depends on compliance with community control conditions and "is a matter resting within the sound discretion of the court." State v. Johnson (May 25, 2001), Montgomery App. No. 17420, 2001 WL 561312, *4. Abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Myers,97 Ohio St.3d 335, 2002-Ohio-6658, at ¶ 75. In this context, we have often stressed that decisions are unreasonable if they are not supported by a sound reasoning process. See, e.g., Jackson v. Jackson (2000),137 Ohio App.3d 782, 799. Based on this particular form of analysis, we might conclude that the trial court's decision in the present case was unreasonable, if Schlecht's allegations were substantiated by the record. However, the evidence on this issue is far from complete.
 {¶ 8} The record indicates that Schlecht was given community control, but was placed in jail after his plea hearing on August 5, 2002, apparently pending evaluation by WCCCF. By the time Schlecht was sent to WCCCF on September 19, 2002, he had been in jail 46 days. The entry transferring Schlecht to WCCCF indicated that he would be given additional jail credit for all time served at WCCCF.
 {¶ 9} Less than two months later, the court filed an entry directing the clerk to prepare a warrant for removal so that Schlecht could be brought to the court for a community control violation hearing. However, the warrant was cancelled at WCCCF's request. Subsequently, on December 9, 2002, the court filed another entry, stating that Schlecht had apparently been unsuccessful in completing the WCCCF program. As a result, the clerk was ordered to prepare a warrant for removing Schlecht to the Tri-County Regional Jail. After Schlecht was removed, a revocation hearing took place on December 11, 2002. However, this hearing was rescheduled to allow Schlecht to retain counsel.
 {¶ 10} The rescheduled hearing was held on December 20, 2002. At that time, Schlecht's counsel did not contest either probable cause or the merits of the violation. As a result, the court found these matters established. During the hearing, neither side mentioned the specific reasons for Schlecht's termination from the program. Both the State and defense did discuss possible disposition, but no evidence was submitted. Defense counsel did comment on Schlecht's alleged mental problems, which included attention deficit disorder, depression, suicidal ideology, claustrophobia, and hearing voices. Defense counsel also mentioned various medications, like Wellbutrin, Zoloft, and Paxil, that had been prescribed, in addition to psychiatric treatment. Unfortunately, no treatment had succeeded yet. In view of these facts, as well as the minor nature of the crime, defense counsel suggested house arrest, in the home where Schlecht's parents and grandparents lived.
 {¶ 11} At the end of the hearing, the trial court indicated that Schlecht would be kept in jail while the court considered what treatment or facility would be appropriate. However, the court then filed an entry on January 14, 2003, finding that no reasonable alternatives to incarceration were available. Accordingly, the court revoked community control and sentenced Schlecht to twelve months in the Ohio Department of Corrections. Schlecht contends this was an abuse of discretion underState v. Qualls (1988), 50 Ohio App.3d 56. Specifically, Schlecht claims that a defense to probation revocation exists where a probationer cannot comply with probation conditions for reasons other than a threat to public safety.
 {¶ 12} In Qualls, the Tenth District Court of Appeals held that "insanity is not a complete defense in a probation revocation hearing but is a mitigating factor which a court should consider when the issue is timely raised." Id. at 60, following the reasoning in Knight v. Estelle
(C.A. 5, 1974), 501 F.2d 963, and Bearden v. Georgia (1983), 461 U.S. 660,103 S.Ct. 2064, 762 L.Ed.2d 221. The Tenth District noted that insanity is not a complete defense because:
 {¶ 13} "`* * * [w]hether the act which made the failure apparent was culpable or punishable is no concern of the revocation authority, which does not sit to punish. Its concern is whether the law has been obeyed, not whether it has been culpably broken. And thus it is that the same act at variance with the law may, for a variety of reasons, be the occasion of both a successful criminal defense and a parole revocation.' In other words, a court considering parole revocation need only consider whether or not the act was committed and may, with fundamental fairness, revoke parole for acts committed while the parolee is insane."50 Ohio App.3d at 60 (citation omitted).
 {¶ 14} Although the defendant in Qualls was allegedly mentally ill when he committed a probation violation, the Tenth District Court of Appeals found no error in the revocation. In this regard, the Tenth District relied on these facts: (1) the defendant was not found innocent by reason of insanity of the crime that triggered the revocation; (2) the defense failed to raise insanity during the revocation hearing; and (3) the trial court did consider the issue, and told the department of corrections to treat the mental problems. Id. See, also, State v.Stahley (Feb. 28, 1997), Huron App. No. H-96-012, 1997 WL 89099, *4 (finding revocation proper where the defendant failed to present evidence of his mental state for the trial court to consider as a mitigating factor).
 {¶ 15} In the present case, Schlecht did mention mental problems during the revocation hearing. However, he did not claim to be insane, nor did he request a competency evaluation. Schlecht also failed to give the trial court (and just as important, this court) any evidence documenting his condition or the extent of his mental problems. In fact, the record is so sparse that we cannot even tell why WCCCF expelled Schlecht from its program.
 {¶ 16} Because Schlecht failed to establish an adequate record for mitigation, we cannot find that the trial court abused its discretion in revoking community control and imposing sentence. Accordingly, the first assignment of error is without merit and is overruled.
 II {¶ 17} In the second assignment of error, Schlecht claims that the trial court erred by failing to impose the minimum sentence. As we mentioned, the trial court filed an entry on January 14, 2003, revoking community control and imposing sentence. In the entry, the court rejected the six month minimum sentence for a fifth degree felony and instead imposed the maximum sentence of twelve months. See R.C. 2929.14(A)(5). Since Schlecht had not previously served a prison term, there would have been a presumption in favor of the minimum sentence.
 {¶ 18} The trial court's sole reason for rejecting the minimum sentence is that such a sentence would demean the seriousness of the offense. According to Schlecht, this was error because a six-month sentence for a sale of $50 worth of marijuana is not demeaning as a matter of law. In other words, the offense is so minor that a six month prison sentence is more than adequate punishment. The State does not address the merits of this argument. Instead, the State simply points out that a minimum sentence is necessarily rejected if a maximum sentence is imposed. As a result, the State claims the trial court in this case could not have acted contrary to law in rejecting a minimum sentence.
 {¶ 19} Several appellate districts have held that if a maximum sentence is properly imposed under R.C. 2929.14(C), findings about a minimum sentence under R.C. 2929.14(B) are not required. See, e.g., Statev. Evans, Franklin App. No. 02AP-230, 2002-Ohio-6559, at ¶¶ 14-15. We do not disagree with this as a general concept. However, the key words are "properly imposed." If a maximum sentence is properly imposed, rejection of a minimum sentence is inherent in the findings used to justify the maximum sentence. By the same token, if the maximum sentence is not properly imposed, an appellate court will go on to decide if the trial court also correctly rejected the minimum sentence. What the State suggests is that we assume the trial court acted properly — but such an assumption is inconsistent with our role as a reviewing court. Accordingly, we will first consider whether the trial court properly imposed the maximum sentence for this crime (the issue raised in the third assignment of error). If we find that the court erred in that regard, we will then decide if the trial court erred in failing to impose the minimum sentence.
 {¶ 20} Concerning maximum sentences, R.C. 2929.14(C) provides that:
 {¶ 21} "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 22} When the trial court imposed the maximum sentence, it found that Schlecht posed the greatest likelihood of committing future crimes. The court also found that imposing less than the maximum sentence would demean the sentencing process because of the significant jail time credit awarded for the prison alternative that Schlecht failed to complete.
 {¶ 23} As a preliminary point, we note that the latter reason is not listed in R.C. 2929.14(C), and is, therefore, not an appropriate basis for imposing a maximum sentence. It is additionally inappropriate because time served in community based correctional facilities is generally considered confinement and is credited towards a prison sentence after community control conditions are violated. State v.Napier (1993), 93 Ohio St.3d 646, 648; State v. Edwards, Summit App. No. 20840, 2002-Ohio-1973, at ¶¶ 10-11; and Drummond v. Wilson, Trumbull App. No. 2002-T-0128, 2002-Ohio-5366, at ¶¶ 12-13 (noting that credit must be given where the defendant experiences the level of confinement described in Napier).
 {¶ 24} The trial court impliedly acknowledged this point when it imposed community control sanctions and credited Schlecht in advance for any time he spent at WCCCF (a community based correctional facility). As a result, the trial court's later comments are perplexing. Specifically, if jail credit must be given for time spent in an alternative facility, the credit cannot be erased through the process of imposing sentence for a community control violation. The fact that credit has been given does not justify a maximum sentence and does not demean the sentencing process. To the contrary, the sentencing process is undermined if a defendant's sentence is increased to account for "credit" that was received.
 {¶ 25} The other finding the trial court made was that Schlecht showed the greatest likelihood of committing future offenses. Reasons for this finding were given, as required by State v. Edmonson,86 Ohio St.3d 324, 329, 1999-Ohio-110. However, the reasons are not supported by the record.
 {¶ 26} When the trial court originally granted community control, it noted that a twelve month sentence would be imposed if Schlecht violated the community control conditions. Although this was the maximum potential sentence for the crime, the court did not give any specific reasons for its decision, other than remarking that less than a maximum sentence would "demean the process." This was an inappropriate finding, because demeaning the sentencing process is not a factor that is listed in R.C. 2929.14(C).
 {¶ 27} Subsequently, at the community control revocation hearing, the trial court also did not discuss its reasons for a maximum sentence. Instead, the court simply said, "I believe you were already told that if supervision is revoked, you will be receiving a twelve-month sentence and that possibility still exists."
 {¶ 28} The court filed an entry revoking community control about a month after the hearing. At that time, the court imposed the maximum sentence, but did not connect specific reasons to the finding that Schlecht showed the greatest likelihood to commit future crimes. Later in the entry, the court did list several factors that indicated recidivism was "more likely" under R.C. 2929.12(D). These included that:
 {¶ 29} "Defendant acted for hire. Defendant has a history of criminal convictions. Defendant has not responded favorably to sanctions previously imposed in adult court. Defendant shows no genuine remorse. Defendant failed to successfully complete the West Central Community Correctional Facility Program."
 {¶ 30} The issue is whether these factors indicate that Schlecht is an individual who has the greatest likelihood of committing future crimes. Schlecht contends that he does not fit within this category because his prior criminal record was minor, with no violent offenses. He also points out that his mental illness prevented him from completing community control. Other pertinent factors include his youth, that he submitted a reasonable alternative plan of house arrest, and that the offense took place more than a year before the indictment. The State has not responded substantively to any of these points, and does not dispute the facts outlined by Schlecht.
 {¶ 31} Again, our analysis is somewhat hampered by an incomplete record. For example, the pre-sentence investigation report has not been transmitted and the revocation hearing was quite brief. Nonetheless, the record we reviewed is adequate enough to indicate that Schlecht was not within the category of offenders who pose the greatest likelihood of committing future crimes. In this regard, we note that the only prior crimes mentioned during the hearing were a conviction for operating a motor vehicle while under the influence of alcohol (OMVI) and a conviction for possession of marijuana. These facts, added to the failure in the WCCCF program, indicate that Schlecht may be likely to commit future crime — but that can be said of any defendant who has prior convictions. However, if the statute is interpreted this broadly, it would be rendered meaningless. As the Fourth District Court of Appeals stressed,
 {¶ 32} "[t]he use of the term `greatest likelihood' requires the court to determine not simply that recidivism is `likely' or `highly likely.' * * * `It is a superlative applicable to a very limited number of offenders for whom hope of reformation seems extremely limited if not truly impossible, at least in the maximum time period of imprisonment available for the particular offense.' * * * Moreover, `[b]ecause prison is considered to be the most effective deterrent and because R.C.2929.14(B) requires that a person who has not been to prison should receive the minimum prison sentence unless the sentencing judge finds that the minimum would demean the seriousness of the offender's conduct or not adequately protect the public from future crime, there would seem to be strong guidance against imposing the maximum prison sentence on one who has not previously been imprisoned.'" State v. Steward, Washington App. No. 02CA43, 2003-Ohio-4082, at ¶ 27, quoting from Griffin 
Katz, Ohio Felony Sentencing Law (2002 Ed.), Section 7.6.
 {¶ 33} In Steward, the defendant had no other adult convictions, but had previous juvenile convictions for theft, two counts of domestic violence, and unauthorized use of a motor vehicle. He also had two probation violations within six months. Furthermore, the defendant admitted during the pre-sentence investigation that he had committed three burglaries for which he had not yet been charged. 2003-Ohio-4082, at ¶¶ 25-26. The Fourth District Court of Appeals found that these circumstances showed "some likelihood of recidivism," but not the "greatest likelihood" that the defendant would commit future crimes. Consequently, the Fourth District reversed the maximum sentence that had been imposed. Id. at ¶ 28.
 {¶ 34} We agree that the category of those who have the greatest likelihood of committing future crimes should be applied to a limited number of offenders. This interpretation is consistent with the very structure of R.C. 2929.14(C), which restricts the other listed categories to such serious offenders as: (1) those who commit the worst forms of an offense; (2) major drug offenders; and (3) certain repeat violent offenders.
 {¶ 35} Accordingly, we find clearly and convincingly that the record fails to support the trial court's imposition of a maximum sentence. The third assignment of error, therefore, has merit and is sustained.
 III {¶ 36} The final issue is whether the trial court erred in failing to impose a minimum sentence, which in this case would have been six months. As we indicated, Schlecht contends that a six month sentence for the sale of $50 worth of marijuana is not demeaning as a matter of law. The State has not addressed the merits of this argument, due to its claim that imposing maximum sentences automatically validates the denial of minimum sentences.
 {¶ 37} As we noted, the trial court's sole reason for rejecting a minimum sentence is that it would demean the seriousness of the offense. Under R.C. 2929.14(B), if the court elects to or is required to impose a prison term, the court:
 {¶ 38} "shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 39} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 40} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 41} Because the trial court made a specific finding that the shortest term would demean the seriousness of Schlecht's conduct, the court complied with the statutory requirements and with Edmonson,86 Ohio St.3d 324, 328. Thus, the real issue is whether the record clearly and convincingly supports the trial court's finding.
 {¶ 42} R.C. 2929.12(B) lists various factors which indicate that an offender's conduct is more serious than conduct normally constituting an offense, including that:
 {¶ 43} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 {¶ 44} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 {¶ 45} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 {¶ 46} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 {¶ 47} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 {¶ 48} "(6) The offender's relationship with the victim facilitated the offense.
 {¶ 49} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
 {¶ 50} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion."
 {¶ 51} The only factor mentioned by the trial court that fits within these categories is that Schlecht "acted for hire." However, the record submitted to us reveals that the sole act performed "for hire" was the alleged sale of marijuana, for $50. In this regard, the indictment alleged that Schlecht "sold or offered to sell a controlled substance; * * * the drug involved in the violation is marijuana." R.C.2925.03(A)(1) likewise provides that "[n]o person shall knowingly do any of the following: * * * [s]ell or offer to sell a controlled substance." R.C. 2925.03(C)(3) goes on to state that "[i]f the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of trafficking in marihuana."
 {¶ 52} Because a sale or offer to sell is part of the elements of the charged offense, the same conduct cannot also be an aggravating circumstance justifying a greater than minimum sentence. Compare Statev. Jones, Franklin App. No. 91AP-1183, 2002-Ohio-3725, at ¶ 18 (rejecting imposition of greater than minimum sentence where, among other things, trial court relied on conduct that was a necessary element of the charged offense). In this regard, we note that the record is devoid of any indication that Schlecht was part of an ongoing criminal enterprise.
 {¶ 53} The factors in R.C. 2929.12(B) are admittedly non-exclusive. The trial court did list several other factors, like Schlecht's history of criminal convictions and lack of genuine remorse, but these all related to the likelihood of recidivism under R.C.2929.12(D), not to the seriousness of the conduct constituting the offense. While these reasons could possibly have supported a finding that a minimum sentence would not adequately protect the public, that is not why the court rejected a minimum sentence.
 {¶ 54} Accordingly, we clearly and convincingly find that the record fails to support the trial court's finding that a minimum sentence would demean the seriousness of the offense. The second assignment of error, therefore, also has merit and is sustained.
 {¶ 55} Based on the preceding discussion, the first assignment of error is overruled, and the second and third assignments of error are sustained. Pursuant to R.C. 2953.08(G)(2), the sentence of twelve months is modified to the minimum sentence of six months. We note that Schlecht has already served the six month sentence.
 {¶ 56} Judgment modified accordingly, and as "modified," affirmed.
WOLFF, J., and GRADY, J., concur.