OPINION
{¶ 1} Billy J. Salmons appeals from a judgment of the Champaign County Court of Common Pleas, which found that he had violated the conditions of his community control. On January 13, 2002, Salmons was indicted for assault on a police officer, in violation of R.C. 2903.13, a felony of the fourth degree, and aggravated menacing, in violation of R.C. 2903.21(A), a misdemeanor of the first degree. On February 6, 2002, Salmons entered a negotiated plea of guilty to assault on a police officer. The court sentenced him to three years of community control with the standard conditions, including the requirements:
 {¶ 2} "2. I will always keep my supervising officer informed of my residence and place of employment. I will obtain permission from my supervising officer before changing my residence or my employment. * * *"
 {¶ 3} "5. I will follow all orders, verbal or written, given to me by my supervising officer or other authorized representatives of the Court * * * or the Department of Rehabilitation and Correction."[1]
 {¶ 4} The court further imposed the following special conditions: (1) forty hours of community service, (2) conventional haircut, (3) no facial hair and that he remain clean shaven, (4) successful completion of substance abuse and alcohol counseling, (5) service of the first five days of his community control in the Tri-County Regional Jail; (6) letter of apology to the deputy, and (7) prohibition against driving.[2] The court indicated that a violation of the conditions of community control could result in seventeen months of incarceration.
 {¶ 5} On May 19, 2003, Salmons was arrested for violation of his community control sanctions, based on his smelling of alcohol and having tested positive for alcohol when meeting with his parole officer. Salmons' blood alcohol content was 0.025. Salmons was also charged with failing to seek permission to change his residence and with failing to report as ordered.[3] After a hearing on the merits, the trial court "found that the merits of the community control violation existed because Defendant changed his address without permission from his supervising officer, Defendant failed to report to Officer Brady of the Union County Adult Parole Authority on May 12, 2003, as ordered, and Defendant showed up at the Union County Adult Probation Office intoxicated." The court returned Salmons to community control with the additional conditions that he was prohibited from drinking alcohol and from contact with certain individuals and that he successfully complete the residential program at West Central Community Correctional Facility. The court again informed Salmons that if he did not complete the West Central program or was not accepted into that program, he would be sentenced to seventeen months in jail.
 {¶ 6} Salmons raises one assignment of error on appeal.
 {¶ 7} "The trial court erred in finding the defendant-appellant guilty of the alleged community control violations and in doing so violated the defendant-appellant's constitutional due process rights and § 2301.30(A) of the Ohio revised code because the defendant-appellant was never given notice of the condition of community control that he was alleged to have violated."
 {¶ 8} Salmons claims that his arrest for violations of his community control sanctions violated his right to due process and R.C. 2301.30(A).
 {¶ 9} As an initial matter, the state indicates that Champaign County has not established its own county department of probation, pursuant to R.C. 2301.27(A), and that it uses, instead, the services of the Ohio Adult Parole Authority, pursuant to R.C. 2301.32(B). See also R.C. 2929.15, R.C. 2951.05. Salmons has not disputed this fact. Because R.C. 2301.30(A) applies to departments of probation that were established under R.C 2301.27, R.C. 2301.30(A) is inapplicable herein.
 {¶ 10} "The right to continue on community control depends on compliance with community control conditions and `is a matter resting within the sound discretion of the court.'" State v.Schlecht, Champaign App. No. 2003-CA-3, 2003-Ohio-5336, at ¶ 7, quoting State v. Johnson (May 25, 2001), Montgomery App. No. 17420. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140; State v.Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, at ¶ 75. In the context of revocation of community control, we have stressed that decisions are unreasonable if they are not supported by a sound reasoning process. Schlecht, supra, at ¶ 7.
 {¶ 11} Although the revocation of community control is not part of the criminal prosecution, an alleged violator of community control conditions is entitled to due process. "The touchstone of due process is fundamental fairness. In this case, fairness required notice to [the defendant] of the conditions of his community control prior to charging him with a violation of one of those conditions." State v. Mynhier (2001),146 Ohio App.3d 217, 221, 765 N.E.2d 917 (citations omitted).
 {¶ 12} Salmons argues that the state's action violated his right to due process, because he "had never been given any restriction on his ability to consume alcohol" and he was never provided any written or oral instruction limiting his ability to consume alcoholic beverages. Regarding the additional supervision violations, Salmons argues that they were "clearly added as an afterthought" of his arrest. He states that the alleged change of residence violation had occurred in February and had not been pursued as a violation until his arrest, and that the failure to report incident was a misunderstanding between Officer Brady and him. Thus, Salmons asserts that the trial court erred in finding him guilty of violating his community control.
 {¶ 13} The state concedes that there was no condition of supervision that prohibited Salmons from consuming alcohol. Thus, the state agrees with Salmons that the trial court improperly held that Salmons had violated that condition.
 {¶ 14} While conceding error with regard to the alleged consumption of alcohol violation, the state contends that the error was harmless, because the trial court "still had a basis for finding violations on the merits and was fully justified in imposing additional restrictions when reimposing community control." The state argues: "The requirement that he attend the program at West Central was justified by the fact that the original charge arose out of the intoxicated condition of Appellant, combined with testimony that he had been drinking, even if that was not a condition of his community control. Such a program was in [Salmons'] best interest."
 {¶ 15} At the hearing on the merits of the community control violations, Jill Brady, an Ohio Parole/Probation Officer in Union County, testified that she had met with Salmons at his residence on May 8, 2003, and she had instructed him to report to her on Monday, May 12th, at 9:00 a.m. Brady indicated that he had come on May 12, 2003, but had arrived at about 3:00 or 3:30 p.m. Brady stated that Salmons indicated that he did not recall being asked to report at 9:00 a.m. (Salmons testified likewise, and presented a business card from Brady, which showed the date of his appointment but not the time thereof.) Brady asked him to come back on May 19, 2003, at 9:00 a.m., which he did, smelling of alcohol. Brady contacted Brandon Deskins, a Parole/Probation Officer in Champaign County and Salmon's supervising officer. Brady described her contacts with Salmons, and asked Deskins what should be done. She stated that Deskins said to arrest Salmons.
 {¶ 16} As to Salmons' failures to request permission to change residence, Deskins testified that on February 20, 2003, Salmons moved from his mother's residence in Logan County to Marysville without permission. Officer Madigan in Logan County had visited Salmons' mother, and she had reported that Salmons had moved to Marysville. She gave Salmons' telephone number to the officer. As to why he decided to have Salmons taken into custody, Deskins stated: "From our training with our chemical dependency specialist, it is not mandatory, but it is preferred if the offender comes into the office intoxicated, that they just be arrested and at least spend a few hours, if not the night, incarcerated due to liability reasons. Since the Defendant's original charge has to do with him being intoxicated and assaultive on a police officer, that fits the criteria in which we are told if they were intoxicated when they come in the office they should be arrested to make sure that they don't leave the office and are assaultive or cause any physical harm to anybody else once they leave the office for liability reasons." When questioned on cross-examination, he reiterated that Salmons "was intoxicated and he was arrested for the safety of the officer and the community." Although Deskins further stated that the arrest was also based on Officer Brady's indication that Salmons had been uncooperative, he admitted that he "may have misunderstood what she had told me." Deskins also indicated, however, that Salmons had moved repeatedly without communicating with his supervising parole officer. Deskins further stated that when Salmons moved within Marysville, he had called Deskins to say that he was being evicted and then called the following week with his new address.
 {¶ 17} After hearing the evidence, the trial court found that Salmons had violated his community control, stating:
 {¶ 18} "The Court authorizes the probation department in Champaign County to arrest any probationer who has drinking in their background to arrest them when they report with any smell of alcohol, no question about it.
 {¶ 19} "You're returned to community control with an additional condition that you can't drink. You're also referred to West Central Community based facility. The probation department will begin the screening. If they don't accept you or if you don't successfully complete the West Central Program, you're going to prison for the 17 months that was earlier promised. * * *
 {¶ 20} "As to the question of credibility and what the Marysville supervising officer stated I understand it was a conversation while transfer was being considered, the question as to the conflict between what Defendant believed and what the officer believed is resolved by the Court in favor of the officer. The Court finds that it has evaluated the credibility and all of the circumstances involved in making that decision.
 {¶ 21} "The Court evaluates the arrest of the Defendant at the time he reported smelling of alcohol to the probation department in Marysville. The Court finds that the Defendant had been uncooperative if for no other reason than he moved without permission from Logan County to Union County.
 {¶ 22} "You're not in charge of when you make moves, the fact that the probation department didn't process you for supervision violation that time doesn't change the fact that you violated supervision.
 {¶ 23} "The purpose of going to West Central is give you an extended exposure to how to stay within the boundaries of the highway of life. That's the whole purpose of being there. * * *"
 {¶ 24} Upon review of the trial court's ruling, it is apparent that Salmons' consumption of alcohol and his arriving at his May 19, 2003, meeting with Brady, smelling of alcohol, were the primary bases for the court's revocation of Salmons' community control conditions and its reissuance of community control with more stringent standards. The court expressly approved of Salmons' arrest upon reporting to his supervising officer with a smell of alcohol, and it imposed additional conditions immediately after making that finding. Both additional conditions — that Salmons not consume alcoholic beverages and that he complete a West Central Community Correctional Facility program — relate to his alcohol consumption.
 {¶ 25} However, the trial court further found Brady to be credible (presumably regarding whether Salmons had been told to report at 9:00 a.m. on May 12, 2003) and that Salmons had been uncooperative "if for no other reason that he moved without permission from Logan County to Union County." We agree with Salmons that it is doubtful that the state would have pursued the two additional violations absent his apparent consumption of alcohol on May 19, 2003. As the record reflects, after failing to receive permission from his supervising officer prior to his move from Logan County to Union County, Salmons was admonished to "bring it to his [supervising officer's] knowledge if [he] moved again." It is undisputed that when Salmons moved within Marysville, he informed Deskins beforehand that he needed to move and provided Deskins a new address shortly thereafter. Likewise, when Salmons reported at the wrong time on May 12, 2003, he was asked to return at May 19, 2003, at 9:00 a.m. Again, it is undisputed that Salmons complied with that instruction, albeit smelling of alcohol. Be that as it may, the state was free to pursue the two additional violations, and the court did not err in finding that those alleged violations had occurred.
 {¶ 26} Accordingly, we conclude that the trial court erred in finding that Salmons had violated a condition of his community control, based on his consumption of alcohol, when such conduct was not prohibited. However, the court did not err in finding that Salmons had violated two conditions of his community control, based on his failure to seek permission to change his address and on his May 12, 2003, meeting with Brady. We do not understand Salmons to argue that the court improperly imposed the additional conditions of no alcohol consumption and attendance at the West Central program. In our judgment, based on the circumstances, the court acted within its discretion in imposing these additional conditions, due to Salmons being "uncooperative" and his having attended a meeting with his supervising officer while smelling of alcohol. Compare State v. Wycuff (May 21, 2001), Stark App. No. 2000-CA-328 (trial court may not modify community control sanctions, absent a violation, once execution of the sentence has begun).
 {¶ 27} The assignment of error is sustained in part and overruled in part.
 {¶ 28} The judgment of the trial court will be reversed, insofar as it found that Salmons had violated a condition of his community control due to his consumption of alcohol. In all other respects, the judgment will be affirmed.
Fain, P.J. and Brogan, J., concur.
[1] The state asserts that the standard conditions were provided in writing to Salmons and were attached to the Journal Entry of Judgment, Conviction and Sentence, filed on April 9, 2002. We note that this attachment was never signed by Salmons. However, Salmons has not contested the state's assertion that this attachment represents the standard conditions, nor has he argued that he did not receive proper notice of these conditions. Rather, he has challenged only the state's claim that the conditions of community control included a prohibition against the consumption of alcohol.
[2] We are troubled and dismayed that the Champaign County Court of Common Pleas has continued to impose special conditions, such as the "clean shaven" and "conventional haircut" requirements, despite our repeated and unequivocal admonitions that such conditions are not permitted. E.g., State v.Schlecht, Champaign App. No. 2003-CA-3, 2003-Ohio-5336; Statev. Alexander (Oct. 6, 2000), Champaign App. No. 2000-CA-6.
[3] It is apparent from the hearing transcript and the parties' briefs that the state prepared a Notice of Supervision Violation. However, that document does not appear in the record. Because Salmons cites to the Notice in his brief and has not argued that he did not receive notice of the charges prior to the June 4, 2003, hearing, we presume that he, in fact, received proper notice.