[Cite as *State v. Fornbrook*, 2023-Ohio-1336.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022 CA 00106 |
| CHRISTOPHER FORNCROOK | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County
Court of Common Pleas, Case 17CR955


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     April 24, 2023

APPEARANCES:

For Plaintiff-Appellee

JENNY WELLS
Licking County Prosecutor
By: KENNETH W. OSWALT
Assistant County Prosecutor
20 S. Second Street, 4th Floor
Newark, OH 43055

For Defendant-Appellant

WILLIAM T. CRAMER
470 Olde Worthington Road, Suite 200
Westerville, OH 43082

*Gwin, P.J.*

{¶1} Defendant-appellant Christopher J. Forncrook ["Forncrook"] appeals from the imposition of a prison sentence after he admitted violating the terms of his community control in the Licking County Court of Common Pleas.

*Facts and Procedural History*

{¶2} In December 2017, Forncrook was indicted on two counts: (1) kidnapping in violation of R.C. 2905.01(B)(1) as a second-degree felony because the victim was released in a safe place unharmed; and (2) gross sexual imposition with a person less than thirteen years of age in violation of R.C.2907.05(A)(4), a third-degree felony

{¶3} The state filed a bill of particulars that alleged on November 6, 2017, Forncrook met with a twelve-year-old girl in Licking County and transported her to a hotel in Columbus, Ohio, where he engaged in sexual contact with her. When he learned the police were looking for him, he transported her back to Newark and released her so that she could ride her bicycle home. Forncrook was subsequently interviewed by the police and allegedly admitted to transporting the girl and having sexual contact with the girl. *Bill of Particulars*, filed Jan 17, 2018. [Docket Entry No. 20].

{¶4} On June 12, 2018, Forncrook entered a negotiated guilty plea to the Indictment. [Docket Entry No. 30]. The court accepted the guilty pleas, but declined to merge the counts, finding that transportation to a hotel in the Columbus area subjected the victim to a substantial increase in risk of harm separate and apart from that involved in the gross sexual imposition. Accordingly, the court imposed a prison term of four years on count one and a concurrent term of four years on count two. The court imposed a mandatory period of five years of post-release control. The court also declared Forncrook

to be a Tier III sex offender.  *Judgement Entry,* filed June 12, 2018.  [Docket Entry No. 31].

{¶5}   On December 24, 2018, Forncrook filed a motion for judicial release. [Docket Entry No. 37].   The trial court overruled the motion by Judgment Entry filed January 3, 2019.  [Docket Entry No. 38].

{¶6}   On March 7, 2019, Forncrook filed a motion for judicial release.  [Docket Entry No. 40].  The trial court overruled the motion by Judgment Entry filed April 29, 2019. [Docket Entry No. 41].

{¶7}   On May 20, 2019, Forncrook filed a motion for judicial release.  [Docket Entry No. 42].  The trial court overruled the motion by Judgment Entry filed November 4, 2019.  [Docket Entry No. 46].

{¶8}   On April 2, 2020, Forncrook filed a motion for judicial release.  [Docket Entry No. 49].  On July 6, 2020, the court granted the motion and modified Forncrook's sentence to three years of community control.  The terms of community control included drug and alcohol monitoring, a mental health treatment program, sex offender specific treatment, 150 hours of community service, a prohibition on possessing pornography, monitoring of internet usage, a prohibition on unsupervised contact with anyone under the age of eighteen, a no-contact order with the victim, and electronic monitoring.  *Judgement Entry,* filed July 6, 2020 at Exhibit A. [Docket Entry No. 59].

{¶9}   On November 30, 2020, a motion to revoke Forncrook's community control was filed alleging,

10-29-20: The defendant failed to report internet identifiers to his Wisconsin Probation Officer (this is an ICOTS case).  Failure to report these

identifiers is a Class H felony in Wisconsin. Mr. Forncrook was given notice of this law on September 8, 2020. He is not receiving any additional charges at this time. The defendant admitted to not reporting these identifiers as he stated he "knew it was not right."

10-26-20: The defendant violated several state of Wisconsin probation terms related to the defendant's sex offense. The defendant had evidence on his iPhone indicating he had been accessing the following online dating applications: Hinge; Catholic Match and eHarmony. Several conversations were found between the defendant via these applications, emails, texts and/or messaging. The defendant was never approved to use the internet.

9-5-20: The defendant engaged in unapproved contact with his minor children after being told to cease all face to face contact with his children until Wisconsin Probation Officers could speak with his ex-wife. The defendant is to have all associations approved by his Probation Officer and he is not to have contact with minor children.

*Motion to Revoke Community Control,* filed Nov. 30, 2020 [Docket Entry No. 63].

{¶10} On January 5, 2021, at the second stage hearing held before the trial judge, Forncrook admitted that he had violated the terms of his community control. [Docket Entry No. 70]. The court continued community control. The terms of community control included drug and alcohol monitoring, a mental health treatment program, sex offender specific treatment, 150 hours of community service, a prohibition on possessing pornography, monitoring of internet usage, a prohibition on unsupervised contact with

anyone under the age of eighteen, a no-contact order with the victim, and obtain and maintain employment. The court further included a term of house arrest "with or without" electronic monitoring and the Volunteers of America halfway house program.

{¶11} On September 28, 2022, a motion to revoke Forncrook's community control was filed alleging that while under supervision in his home state of Wisconsin, Forncrook on June 17, 2022, cut off his GPS monitor before absconding from supervision. *Motion to Revoke Community Control,* filed Sept. 28,2022. [Docket Entry No. 81].

{¶12} On October 27, 2022, at the second stage hearing held before the trial judge, Forncrook admitted that he had violated the terms of his community control. *Judgment Entry,* filed Oct. 27, 2022. [Docket Entry No. 87]. Forncrook' s attorney requested that community control be continued, noting that Forncrook was going through a mental health crisis at the time he absconded. Forncrook had lost his job, was getting evicted, and attempted to commit suicide by consuming pills. Forncrook' s attorney noted that he had no substantial criminal history beyond this case.

{¶13} Forncrook also addressed the court directly and was apologetic, explaining that he did not violate out of defiance, but rather desperation. Forncrook said he was suffering from mental illness and requested a sentence somewhere between prison and community control where he could get help for his mental health issues. Forncrook noted that he sent the court a letter, and the judge indicated that he had read the letter. In the letter, Forncrook noted that he was successful with programming in prison, where he was found to be a non-violent offender with a low chance of recidivism. However, Forncrook alleged that when his supervision was transferred to Wisconsin, the paperwork erroneously indicated that he was involved in a violent kidnapping and rape. As a result,

he was labelled a sexually violent offender and was subject to the strictest sanctions and GPS monitoring. Forncrook objected to the designation, but was told that it was the law. The restrictions prevented him from having contact with his four children, and impacted his housing and job opportunities, leading to him being homeless and unemployed. He was also denied mental health treatment because he was deemed too dangerous to be around other patients. Forncrook expressed remorse for absconding and asked to be put back in the Volunteers of America program, where he had been successful.

{¶14} The trial court found that prison was appropriate and reimposed the prior four years, with 1029 days of confinement credits. The court also imposed a mandatory five years of post-release control and declared Forncrook to be a Tier III sex offender. Forncrook was ordered to pay costs, but not fines.

*Assignment of Error*

{¶15} Forncrook raises one Assignment of Error,

{¶16} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY TERMINATING JUDICIAL RELEASE AND RE-IMPOSING APPELLANT'S SUSPENDED PRISON TERM AFTER APPELLANT SUFFERED A MENTAL HEALTH BREAKDOWN AND ABSCONDED FROM SUPERVISION WITHOUT COMMITTING ANY ADDITIONAL CRIMES."

*Law and Analysis*

**Standard of Appellate Review**

{¶17} The right to continue community control depends on compliance with community control conditions and "is a matter resting within the sound discretion of the court." *State v. Garrett*, 5th Dist. Stark No. 2010 CA 00210, 2011-Ohio-691, ¶ 13; *State v.*

*Schlecht*, 2nd Dist. Champaign No. 2003-CA-3, 2003-Ohio-5336, *citing State v. Johnson*, 2nd Dist. Montgomery No. 17420, 2001 WL 561312(May 25, 2001).

**{¶18}** A community control revocation hearing is not a criminal trial. *State v. White*, 5th Dist. Stark No. 2009-CA-00111, 2009–Ohio–6447. Once a court finds a defendant violated the terms of community control, the decision whether to revoke community control lies within the court's sound discretion. *State v. White, supra* at ¶ 14. Thus, a reviewing court will not reverse a trial court's decision absent an abuse of discretion. *State v. Sheets*, 112 Ohio App.3d 1, 677 N.E.2d 818 (4th Dist. 1996); *State v. Ritenour*, 5th Dist. Tuscarawas No. 2006AP010002, 2006-Ohio-4744, ¶ 37. As the Ohio Supreme Court has recently explained,

> The term "abuse of discretion" connotes that "'the court's attitude is unreasonable, arbitrary or unconscionable.'" [*State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77] at ¶ 60, *quoting State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984), *quoting Spalding v. Spalding*, 355 Mich. 382, 384, 94 N.W.2d 810 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of

judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" Id., *quoting Spalding* at 384-385, 94 N.W.2d 810. *State v. Weaver,* Slip Op. 2022-Ohio-4371, ¶24 (Dec. 8, 2022). An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In *re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

**{¶19}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), *certiorari denied*, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183(1990). Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record. *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846(1988).

**Issue for Appellate Review**: *Whether the trial court abused its discretion by revoking Forncrook's community control and imposing the suspended prison term*

**{¶20}** Forncrook argues, in essence, that his mental health problems constitute a mitigating factor. *See, State v. Wolfe*, 5th Dist. Stark No. 2008-CA-00064, 2009-Ohio-830. However, Forncrook's act of removing his GPS monitor was undoubtably a voluntary, conscious act. Forncrook admits as much in his letter to the trial judge filed October 27, 2022.

**{¶21}** Forncrook was previously violated for not following the community control terms imposed in Wisconsin. *Motion to Revoke Community Control,* filed Nov 30, 2020. [Docket Entry No. 63]. Thus, Forncrook had an opportunity at the previous revocation hearing to bring to the trial judge's attention any claims that he was subjected to inappropriate or unauthorized conditions of community control supervision. Furthermore, Forncrook could have filed a motion with the trial court to modify, correct or clarify the terms of his community control supervision instead of simply choosing to ignore them. Forncrook was advised when he previously violated the conditions of his community control that any further violations would result in the imposition of the suspended prison sentence. *Judgement Entry,* filed July 6, 2020 at Exhibit A, <u>Residential Sanctions</u> No. 5 [Docket Entry No. 70].

**{¶22}** Forncrook did not give the trial judge any evidence documenting his alleged mental breakdown. Forncrook did not provide the trial judge with any evidence or affidavits to substantiate that he was labeled a sexually violent offender, or that he was denied treatment because of his designation. Forncrook chose to admit the violations rather than present evidence during the revocation hearing. Thus, the record contains no evidence to substantiate Forncrook's claim that he suffered a mental health crisis that led him to cut off his ankle monitor and abscond from supervision. Strict supervision requirements and electronically monitored house arrest do not justify removing the ankle monitor and absconding from supervision. Though the conditions may be difficult, they are not unreasonable.

{¶23} Because Forncrook failed to establish an adequate record for mitigation, we cannot find that the trial court abused its discretion in revoking community control and imposing sentence.

{¶24} Forncrook's sole Assignment of Error is overruled.

{¶25} The judgment of the Licking County Court of Common Pleas is affirmed.


By: Gwin, P.J.,

Delaney, J., and

King, J., concur