OPINION
{¶ 1} Ronald Williamitis appeals from his conviction and sentence on two counts of complicity to commit attempted felonious assault.
 {¶ 2} Williamitis advances four assignments of error in this expedited appeal. First, he contends the trial court erred by denying his motion for a bill of particulars where the indictment failed to provide adequate notice of the charges against him. Second, he challenges the legal sufficiency and manifest weight of the State's evidence at trial. Third, he claims the trial court erred in sentencing him to a more-than-minimum term based on a personal opinion that is unsupported by the record. Fourth, he argues that the cumulative effect of the foregoing errors deprived him of his right to a fair trial.
 {¶ 3} Having reviewed the record, we find no error in the trial court's denial of Williamitis' motion for a bill of particulars. We also conclude that his convictions are supported by legally sufficient evidence and are not against the manifest weight of the evidence. We agree with Williamitis' argument, however, that the trial court erred in imposing a more-than-minimum sentence based on a personal opinion not supported by the record. Finally, we find that no "cumulative error" exists. Accordingly, we will modify Williamitis' sentence to reflect concurrent one-year terms in prison. The trial court's judgment will be affirmed as modified.
 I. Factual and Procedural Background {¶ 4} The present appeal stems from a proposed business venture between Williamitis and an individual named Jonathan Edwards. In the summer of 2003, Edwards and Williamitis met several times and discussed the possibility of investing in residential properties together. Despite his initial interest, Williamitis rejected the proposal and elected not to invest with Edwards. After learning of Williamitis' decision, Edwards became angry and attempted to get even. He sent a letter to a bankruptcy court judge and accused Williamitis of fraud regarding the disclosure of assets in a prior bankruptcy case. Edwards also sent copies of the letter, which he signed fictitiously as "Mr. Hat," to the Federal Bureau of Investigation, the Montgomery County prosecutor's office, the bankruptcy trustee for Williamitis' case, the City of Dayton prosecutor's office, the Dayton Chamber of Commerce, and the Dayton Lions Club.
 {¶ 5} Edwards also took a copy of the letter to Assured Credit, an Oakwood-based business operated by Williamitis. Upon entering Williamitis' office, Edwards crumpled the letter and tossed it toward him. Edwards then said, "Happy indictment," and left the building. Assured Credit employee Rion MacConnell retrieved the ball of paper and read the letter to Williamitis, who is blind. After hearing the contents of the letter, Williamitis became alarmed. Over the next few days, he incorrectly surmised that the "Mr. Hat" who had signed the letter was John Hart, an attorney with whom he had some familiarity. Williamitis also contemplated retaliating against Edwards by hiring someone to harm or kill him. Williamitis shared this idea with MacConnell, who promptly warned Edwards. MacConnell also tape recorded Williamitis talking about hiring someone to injure Edwards and Hart. MacConnell and Edwards subsequently gave the tape recording to Oakwood police officer Brian Pond and detective Mike Jones. After reviewing the tape, Jones arranged for undercover officer Bill Myers to pose as a "hit man" and meet with Williamitis.
 {¶ 6} The meeting between Myers and Williamitis occurred on August 19, 2003, at the office of Assured Credit. During the meeting, Williamitis gave Myers $250 to injure Edwards and Hart. He also gave Myers addresses and physical descriptions for the two men. Other law enforcement officers listened to the meeting through a hidden wire, and they arrested Williamitis following Myers' departure with the money.
 {¶ 7} On August 27, 2003, a grand jury indicted Williamitis on two counts of complicity to commit felonious assault. The matter proceeded to a bench trial, and Williamitis was convicted of the lesser included offenses of complicity to commit attempted felonious assault. Following a sentencing hearing, the trial court imposed concurrent prison terms of two years for the count involving Hart and one year for the count involving Edwards. This timely appeal followed.
 II. Analysis {¶ 8} In his first assignment of error, Williamitis contends the trial court erred by denying his motion for a bill of particulars where the indictment failed to provide adequate notice of the charges against him. In particular, Williamitis claims a bill of particulars was necessary to clarify (1) which subsection of the complicity statute the State was proceeding under, (2) the identity of the intended victims, (3) the manner in which he aided or abetted another in the attempt to commit felonious assault, and (4) the identity of the individual he aided or abetted.
 {¶ 9} Upon review, we find this assignment of error to be unpersuasive. The purpose of a bill of particulars is to specify the alleged conduct that is the basis of the charge against a defendant. State v. Sellards (1985), 17 Ohio St.3d 169. In response to a motion for a bill of particulars, the State generally must supply the requested information. Id. When the denial of a bill of particulars does not prejudice a defendant by hindering the presentation of his defense, however, a denial of his request is harmless error. State. v. Chinn (1999),85 Ohio St.3d 548, 568-569. This court also has recognized that a defendant waives "any claim of error concerning his failure to receive a bill of particulars by proceeding to trial without said bill of particulars or a request for a continuance." State v.Sinclair, Greene App. No. 2002-CA-33 (citing cases).
 {¶ 10} In the present case, Williamitis moved for a bill of particulars on September 11, 2003, requesting "[a] detailed statement of the particular acts, conduct, method, manner or means by which the State of Ohio maintains that Defendant committed the offense set forth in Count I herein."[1]
Thereafter, on October 7, 2003, Williamitis moved to compel discovery and, in the body of his motion, also asked the trial court to compel the State to provide the bill of particulars. The trial court's docket contains no other mention of the bill of particulars. The matter proceeded to a bench trial commencing on March 31, 2004. At the time of trial, defense counsel failed to mention the missing bill of particulars and participated in the proceeding without objection. Moreover, a review of the trial transcript fails to reflect any surprise or uncertainty by defense counsel regarding the nature of the charges or the alleged criminal conduct at issue. The record reflects that the defense counsel appears to have obtained this information through discovery which included, inter alia, Jonathan Edwards' initial statement to Oakwood police, a copy of the tape recorded conversation wherein Williamitis discussed with MacConnell the possibility hiring someone to injure Edwards and John Hart, and a copy of the tape recorded conversation in which Williamitis actually hired an undercover police officer to carry out the "hit" on Edwards and Hart.
 {¶ 11} In light of the foregoing facts, we have reservations about whether Williamitis properly preserved the bill-of-particulars issue for our review. After moving for a bill of particulars and seeking to compel a response from the State, Williamitis appears to have remained silent about the issue for nearly six months and proceeded to trial without mentioning the trial court's failure to rule on his motion.[2] As noted above, a defendant waives "any claim of error concerning his failure to receive a bill of particulars by proceeding to trial without said bill of particulars or a request for a continuance."Sinclair, supra.
 {¶ 12} In any event, we also find Williamitis' assignment of error to be unpersuasive on its merits. His first argument is that a bill of particulars was necessary because the indictment included the numerical designation for one subsection of the complicity statute, R.C. § 2923.03(A)(1) (soliciting or procuring another to commit an offense), while tracking the statutory language of a second subsection, R.C. § 2923.03(A)(2) (aiding or abetting another in the commission of an offense).
 {¶ 13} Williamitis actually has it backward. Both counts of the indictment track the "soliciting or procuring" language of R.C. § 2923.03(A)(1) but cite the numerical designation for "aiding or abetting" under R.C. § 2923.03(A)(2). Although it would be appropriate to seek clarification of such a discrepancy via a bill of particulars, Williamitis' motion did not address this specific issue, and absolutely nothing in the record suggests that he was misled by (or even noticed) the inaccurate numerical designation prior to raising it on appeal. The wording of the indictment tracked the "soliciting or procuring" language of R.C. § 2923.03(A)(1), the State's evidence supported a "soliciting or procuring" case against Williamitis, and the State proceeded at trial under such a theory. The trial transcript reveals that defense counsel was prepared to defend against a "soliciting or procuring" case and never registered any surprise. Thus, the lack of a bill of particulars to correct the numerical designation did not prejudice Williamitis.
 {¶ 14} Williamitis also was not prejudiced by his failure to receive a bill of particulars naming his intended victims. The tape recordings and other discovery materials given to defense counsel plainly identified Edwards and Hart as the intended victims. In addition, given that the two counts of the indictment were identical and Williamitis was convicted on both, the State's failure to match either count to either defendant is of little importance.
 {¶ 15} Finally, we are unpersuaded by Williamitis' argument that a bill of particulars was necessary to clarify the manner in which he aided or abetted another and to set forth the identity of the individual he aided or abetted. As noted above, the language of the indictment did not allege complicity based on "aiding or abetting." It alleged complicity based on "soliciting or procuring." Given that Williamitis was neither charged nor convicted on an "aiding or abetting" theory, he was not prejudiced by his failure to receive a bill of particulars addressing such matters. In light of the tape recordings mentioned above, we note too that Williamitis could not possibly have been confused or unsure about the identity of the person he alleged by solicited or procured to carry out felonious assaults on Edwards and Hart. Accordingly, we overrule his first assignment of error.
 {¶ 16} In his second assignment of error, Williamitis challenges the legal sufficiency and manifest weight of the State's evidence at trial. When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v. Hawn (2000),138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 17} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 18} On appeal, Williamitis argues the legal sufficiency and manifest weight issues together. In particular, he argues that his convictions are not supported by legally sufficient evidence and are contrary to the manifest weight of the evidence because (1) MacConnell prodded him into hiring someone to harm Edwards and Hart, (2) police were unsure what crime had been committed after talking to Edwards and Hart and at least initially did not have a copy of the letter written by Edwards, and (3) the evidence of his intent to have Edwards and Hart seriously harmed was ambiguous. Williamitis also contends the evidence at most would support convictions for aggravated assault, aggravated menacing, or menacing.
 {¶ 19} Upon review, we find Williamitis' arguments to be wholly without merit. Williamitis was convicted of two counts of knowingly soliciting or procuring someone to attempt to cause serious physical harm to another person. Williamitis' tape recorded conversation with Myers, who was posing as a "hit man," provided the trial court with legally sufficient evidence to support his conviction on these counts. During that conversation, Williamitis paid $250 and promised an additional $250 later for Myers to give Edwards a "dirt nap" or to cause him to "spend a lot of quality time in the hospital." Williamitis urged Myers to "[b]eat the hell" out of Edwards and to "[h]ospitalize him, same with Hart." With regard to Hart, Williamitis added that he wanted Myers to "knock a couple teeth out" using brass knuckles. Williamitis then provided Myers with addresses and physical descriptions for Edwards and Hart. In our view, this evidence is legally sufficient to support a finding that Williamitis knowingly solicited or procured Myers to attempt to cause serious physical harm to Edwards and Hart, and such a finding is not against the manifest weight of the evidence.
 {¶ 20} As for Williamitis' arguments, the tape of his conversation with MacConnell does reflect that he received some encouragement to hire someone to assault Edwards and Hart. Nevertheless, the record reflects that the idea originated with Williamitis, and he does not advance any sort of entrapment theory. The fact that MacConnell encouraged Williamitis to some degree does not mean that the convictions, which resulted largely from Williamitis' subsequent conversation with Myers, are based on legally insufficient evidence or are against the manifest weight of the evidence.
 {¶ 21} With regard to Williamitis' next argument, we find little relevance in the fact that police were unsure what crime had been committed after talking to Edwards and Hart and at least initially did not have a copy of the letter written by Edwards. The charging decision ultimately was made by the prosecutor's office not the police department. Those charges resulted in convictions that are supported by legally sufficient evidence and are not against the manifest weight of the evidence. Likewise, Williamitis' contention that police lacked a copy of Edwards' letter when they began their investigation does absolutely nothing to establish that his convictions are supported by insufficient evidence or are against the manifest weight of the evidence.
 {¶ 22} We also find no merit in Williamitis' argument that evidence of his intent to have Edwards and Hart seriously harmed was ambiguous. In support of this proposition, he relies heavily on his statements to Myers that he wanted to "scare" Edwards and Hart, and that he wanted Myers to do "[w]hatever you can legally do, get away with." Read in context, however, these statements in no way suggest that Williamitis really intended only to "scare" the men through purely "legal" means. Williamitis made these remarks in the midst of instructing Myers to hospitalize the men and to use brass knuckles to knock out teeth. Finally, we disagree with Williamitis' claim that the evidence at most would support convictions for aggravated assault, aggravated menacing, or menacing. Based on our review of the record, we conclude that the evidence fully supports Williamitis' conviction on both counts of the indictment. Accordingly, we overrule his second assignment of error.
 {¶ 23} In his third assignment of error, Williamitis claims the trial court erred in sentencing him based on personal opinions that are unsupported by the record. In particular, he stresses a remark by the trial court prior to imposing his sentence that the allegations in Edwards' letter to the bankruptcy court "appear[ed] to be the truth[.]"
 {¶ 24} Williamitis also contends the trial court improperly sentenced him to two years in prison for the conviction involving attorney John Hart based on an unsupported belief that his motivation to harm Hart stemmed from hard feelings over prior litigation in which Hart had represented the opposing side. Williamitis argues that the record is devoid of evidence to support either of the foregoing opinions. As a result, he insists that he should have received no more than the statutory minimum sentence for each of the two convictions.
 {¶ 25} When a court imposes a sentence for a felony on an offender who has not previously served a prison term, the court must impose the shortest prison term authorized for the offense unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender. R.C. § 2929.14(B). The trial court is not required to give its reasons for these findings. State v. Edmonson,86 Ohio St.3d 324, 1999-Ohio-110. "Although reasons need not be given for finding that a minimum sentence would demean the seriousness of the offender's conduct or not adequately protect the public from future crime, the record must show a factual basis for that finding." Griffin Katz, Ohio Felony Sentencing Law (2003 Ed.) at 751, § 8:4, citing State v. Jones, Franklin App. No. 01AP-1183, 2002-Ohio-3725, and State v. Frazier, Lake App. Nos. 2001-L-052, 2002-L-003, 2002-Ohio-7132. As we recognized inState v. Schlecht, Champaign App. No. 2003-CA-3,2003-Ohio-5336, when a trial court makes the required findings to impose more than a minimum sentence, the only issue for us is whether the record supports the trial court's findings.[3]
Id. at ¶ 41.
 {¶ 26} In the present case, Williamitis' convictions for complicity to commit attempted felonious assault are third-degree felonies. The prison sentence available for a third-degree felony is one, two, three, four, or five years. R.C. § 2929.14(A)(3). The trial court sentenced Williamitis, who had no prior felony convictions, to one year for the count involving Edwards and two years for the count involving Hart. Prior to imposing these sentences, the trial court addressed Williamitis as follows:
 {¶ 27} "Sir, you had a perception that someone was threatening you financially. And you are a — educated as an attorney even though I understand you're not licensed as an attorney, you're educated as an attorney. You more than most people should understand the need to operate within the legal system and to settle your disputes appropriately and professionally.
 {¶ 28} "Instead of doing that, you had a perception — a perception that someone was threatening you financially, and even in your Pre-Sentence Investigation, you indicated that you were concerned that your wife or you, your business, your livelihood was being threatened by someone revealing what appears to be the truth to the Bankruptcy Court. And instead of acting in a manner that was consistent with the law, you chose to very callously hire and pay someone to harm two individuals.
 {¶ 29} "My most serious concern in this case, sir, is not only your demeanor in the tape recording with the police officer; you were very cold, you were very calculating, and you were very determined to cause harm to two people. What is also of concern is that when that police officer left your office, you didn't know he was a police officer. You thought you had hired someone to hurt two people.
 {¶ 30} "You didn't say: `Tell me how I can get a hold of you in case I change my mind. Tell me what I can do to call this off.' You had him leave with the intention that the next time you heard something, two people would be seriously injured.
 {¶ 31} "Sir, you showed — you showed — at the time and you continue to show no remorse whatsoever for your actions. But to justify those actions by your perceived — and I say perceived fair — that — that someone was going to financially jeopardize what you believed to be some rights you had."
 {¶ 32} After stating that it had considered the "purposes and principles of sentencing" as well as the "seriousness and recidivism factors," the trial court discussed the counts relating to Edwards and Hart as follows:
 {¶ 33} "Sir, with regard to Mr. Hart, it's my understanding he is an attorney with whom you were previously involved in a lawsuit and that he was representing another party to that lawsuit. That you decided you didn't like the way he had operated himself in that case or how he had represented his client. And apparently as an afterthought, in this case, or after you had decided that you had some perceived action against Mr. Edwards, you decided to add Mr. Hart to the list of persons you wanted injured.
 {¶ 34} "Mr. Hart appears to have done nothing more than been an adversary of yours in a lawsuit. An attorney, like you, who was representing his client. And as I said, I understand you are not licensed to practice law, but you are educated as a lawyer.
 {¶ 35} "Your conduct with regard to Mr. Hart I am going to find, sir, was not only very serious, but I'm going to find that the shortest prison term with regard to the Count relating to Mr. Hart would demean the seriousness of your — of your conduct and the shortest prison term would not adequately protect the public from future crime by you.
 {¶ 36} "I'm going to sentence you, sir, with regard to the — the Count relating to Mr. Hart to two years in the Corrections Reception Center.
 {¶ 37} "With regard to the Count relating to Mr. Edwards, those circumstances are somewhat different in that you perceived that you had some action that you wanted to take against Mr. Hart — or, excuse me, Mr. Edwards because of what you perceived to be his conduct towards you.
 {¶ 38} "In that Count, sir, I'm going to sentence you to one year at the Corrections Reception Center to be served concurrently with the other Count."
 {¶ 39} Having reviewed the record, we find no evidence to support the trial court's observation that the allegations in Edwards' letter "appear[ed] to be the truth[.]" We are unpersuaded, however, that the trial court relied on such a belief to impose more severe punishment on Williamitis. To the contrary, the trial court appears to have been more lenient
when sentencing him for the count involving Edwards precisely because of the allegations contained in the letter. Although the trial court found Williamitis' actions misguided, it recognized that his criminal conduct toward Edwards was motivated by "what you perceived to be his conduct towards you." Thus, the court imposed the statutory minimum term of one year in prison on the count involving Edwards.
 {¶ 40} As for the count involving Hart, however, we agree with Williamitis' argument that the trial court improperly based his two-year sentence on an unsupported belief that his motivation to harm Hart stemmed from hard feelings over prior litigation. Although Williamitis and Hart had been on opposite sides of litigation in the past, nothing in the record suggests that this fact motivated Williamitis to hire a hit man to assault him. Rather, undisputed trial testimony established that Williamitis desired to have Hart harmed for the same reason that he wanted Edwards hurt. He incorrectly surmised that Edwards and Hart both had played a role in drafting and circulating the damaging letter to state and federal officials.
 {¶ 41} We also believe Williamitis was prejudiced by the trial court's mistaken belief that he had a less compelling reason for wanting to harm Hart than he did Edwards. The trial court relied on this erroneous belief to impose twice as severe a punishment for the count involving Hart as for the count involving Edwards. In reality, however, Williamitis' actions and motives with regard to Edwards and Hart were identical. He believed that both men had participated in a letter-writing scheme to harm him, and he sought to hire a hit man to assault them. In short, the record reveals no principled basis for distinguishing between the counts involving Edwards and Hart with regard to appropriate punishment. Thus, the trial court erred in finding that the circumstances surrounding Williamitis' conduct toward Edwards and Hart were "somewhat different."
 {¶ 42} Finally, we clearly and convincingly find that the record fails to support the trial court's determination that the shortest prison term with regard to the count involving Hart would demean the seriousness of Williamitis' conduct and would not adequately protect the public from future crime. The trial court made no such determination with regard to the count involving Edwards despite the fact that the circumstances surrounding the two offenses were identical. Moreover, the only facts we see that might support such a conclusion are Williamitis' cold and calculating demeanor and his lack of remorse. The trial court did not find these facts sufficient to support imposing more than a minimum sentence on the count involving Edwards, however, and we reach the same conclusion as to the count involving Hart. Accordingly, we sustain Williamitis' third assignment of error, and we will modify his two-year sentence for the count involving Hart to the minimum sentence of one year. See Schlecht, supra, at ¶ 54-55 (modifying a sentence to the statutory minimum after concluding that the record did not support the trial court's finding that a minimum sentence would demean the seriousness of the offense).
 {¶ 43} In his final assignment of error, Williamitis argues that even if the various errors he has alleged herein were harmless individually, their cumulative effect resulted in an unfair trial. It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal, 87 Ohio St.3d 378, 397,2000-Ohio-448. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. Id. at 398. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. State v. Thomas,
Clark App. No. 2000-CA-43, 2001-Ohio-1353. In the present case, however, the only possible harmless error involves the trial court's failure to grant Williamitis a bill of particulars. As a result we find no cumulative error based on the existence of multiple individually harmless errors. Williamitis' fourth assignment of error is overruled.
 III. Conclusion {¶ 44} Based on the reasoning set forth above, the trial court's judgment entry is modified to reflect concurrent one-year sentences for the appellant's conviction on two counts of complicity to commit attempted felonious assault. As modified, the trial court's judgment is affirmed.
 {¶ 45} Fain, P.J., and Wolff, J., concur.
[1] Although Williamitis' bill of particulars sought specifics only as to count one, the indictment against him contained two identically worded counts.
[2] Although Williamitis suggests that the trial court denied his motion for a bill of particulars, the record is devoid of an entry ruling on the motion.
[3] In its brief, the State asserts that the trial court's imposition of a more-thanminimum sentence is not appealable by Williamitis. We disagree. "Although giving more than the minimum prison sentence is not enumerated as a ground for appeal in R.C.2953.08(A), R.C. 2929.14(B) requires that the factors justifying more than the minimum sentence must be based upon a finding `on the record.' Consequently, the imposition of a greater sentence without such findings should be appealable as `contrary to law.'" Griffin Katz, Ohio Felony Sentencing Law (2003 Ed.) at 887 n. 11, § 10:5. Similarly, when the trial court makes the requisite findings but those findings are unsupported by the record, it can be said that a more-than-minimum sentence is "contrary to law" and subject to appellate review. Any other conclusion would grant a trial court unchecked power to make arbitrary findings devoid of evidentiary support. Perhaps for that reason, this court and other appellate districts routinely have entertained claims that more-than-minimum sentences are not supported by the record. See, e.g., State v. Schlecht, Champaign App. No. 2003-CA-3,2003-Ohio-5336, at ¶ 36-54; State v. Jones, Franklin App. No. 01AP-1183, 2002-Ohio-3725.