DECISION AND JUDGMENT ENTRY
{¶ 1} Terley L. Clagg, Jr. appeals the judgment of the Washington County Court of Common Pleas sentencing him to ten years in prison, the statutory maximum sentence for the offense of aggravated arson, a felony of the first degree. Clagg argues that the trial court erred in imposing the maximum term of imprisonment because the reasons for imposing the maximum sentence were: (1) inadequate under R.C. 2929.14(C) and2929.19(B)(2); and (2) unsupported by the record. Specifically, Clagg contends that the trial court's improper reliance upon unsupported and/or impermissible factors in imposing the maximum sentence warrants reversal of his sentence. Because we find that the trial court's undisputed findings regarding the substantial economic damages caused by the fire, alone, support the imposition of the maximum sentence, we conclude that the trial court's purported reliance upon other unsupported or impermissible factors constitutes nothing more than harmless error.
 {¶ 2} Additionally, Clagg argues that the trial court's imposition of a sentence greater than minimum, concurrent sentences was based upon facts that were not found by a jury or admitted by him. Therefore, he contends that his sentence violates his rights under the Sixth Amendment of the United States Constitution, and is contrary to the United States Supreme Court's holdings in Blakely v. Washington (2004), 542 U.S. ___,124 S.Ct. 2531, 159 L.Ed.2d 403 and United States v. Booker (2005), 542 U.S. ___, 125 S.Ct. 738, ___ L.Ed.2d ___. Because we adhere to our holding in State v. Scheer, 158 Ohio App.3d 432, 2004-Ohio-4792, wherein we found that Ohio's sentencing statutes do not violate Blakely, we disagree. Accordingly, we overrule Clagg's assignments of error and affirm the trial court's judgment.
 I. {¶ 3} On January 29, 2004, the Washington County Grand Jury indicted Clagg and his codefendant, Stephen Lemon, for a series of offenses that occurred on or about November 26 — November 28, 2003. Specifically, the Grand Jury indicted Clagg for: (1) two counts of theft in violation of R.C. 2913.02(A)(1), felonies of the fifth degree; (2) one count of theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fifth degree; (3) two counts of breaking and entering in violation of R.C.2911.13(A), felonies of the fifth degree; and (4) one count of aggravated arson in violation of R.C. 2909.02(A)(1), a felony of the first degree.
 {¶ 4} Clagg initially pled not guilty to all counts of the indictment. Thereafter, Clagg entered into a plea agreement in which he agreed to plead guilty to a single count of theft and the sole count of aggravated arson. The state agreed to dismiss the remaining counts of the indictment. At his change of plea hearing, Clagg admitted to lighting a fire that burned down a building in Marietta, Ohio, and that the value of the stolen property exceeded $500.
 {¶ 5} The trial court conducted a sentencing hearing on June 18, 2004. At that hearing, the trial court reviewed the seriousness and recidivism factors contained in R.C. 2929.12. The court found that Clagg had a history of criminal convictions and questioned whether he showed true remorse for his actions. The trial court also found that there were multiple victims who suffered psychological and economic harm.
 {¶ 6} The trial court heard victim impact statements from owners of two of the businesses destroyed in the fire. Rilla Wetz, of Mad Hen Primitives, stated: "Mr. Clagg, you've never met my family, but you decided that we did not deserve what we — what we owned, and you took it from us. With the flick of a match — match, you changed everything. You took the wonderful building that we had worked so hard for. You took all the handmade items that we had spent many hours on. You took the joy from my daughter's eyes, when she sat at the big white table painting and talking to customers. You took my confidence, my trust, and my desire to create, and for that, I will never forgive you."
 {¶ 7} Jennifer Gaston, owner of the Woolen Willow, stated: "And I just wanted to say that this caused a really big hardship to the family. My husband has been out of work for quite some time, and we really counted on my support to help us, and because of all that I lost, it has been very hard to make a come-back, and to also have the confidence to continue doing what I do. And although we — we have been working hard, it will forever change the way I feel about how I do things. And it's — it's been a great loss to us and to my family."
 {¶ 8} The trial court then found that, pursuant to R.C. 2929.14(B)(2), the shortest prison term would demean the seriousness of the offense and would not adequately protect the public from future crimes. After enumerating certain facts underlying Clagg's codefendant's motive for committing the theft offenses, the trial court stated:
There's a ton of stuff that came out of * * * those buildings. A lot of stuff.
There — there were all — I think, five businesses taken. Buildings were burnt, and they weren't just burned a little bit; they were burnt, basically, almost to the ground. All that's left is the — the stone, the brick. And — and all of these businesses were ransacked and the cash was taken and stolen.
* * * Mr. Clagg has a prior record. He has a DUI in December 7th of 2001. He received 45 days in jail. He was convicted. He had no driver's license. On July 11th, 2002, he was convicted of that. He has a shoplifting conviction, December 28th of 2003 in West Virginia. He received one year of probation. So, he would have been on probation at the time this happened.[1]
I made some other notes. I wanted to see if there's anything else in — factually, I wanted to put down.
Mr. Clagg is — is a disabled person. he does have income and disability. So, basically, this Court believes, as far as arsons go, this is about as bad as it gets. The Court does find, pursuant to [R.C.] 2929.14(C), that the Defendant has committed the worst form of this offense, and at this point, the Court chooses to impose the maximum sentence.
 {¶ 9} The trial court also ordered Clagg to serve an eleven-month term of incarceration for the theft conviction, and further ordered that he serve his sentences consecutively.
 {¶ 10} In its sentencing entry, the trial court specifically found that Clagg had committed the worst form of aggravated arson and theft. In doing so, the court specifically noted the great economic harm to the victims and the risk to the lives of the firefighters called to fight the fire.
 {¶ 11} The trial court also reiterated its findings regarding the economic damages the fire caused, noting that Clagg's actions, in the aggregate, caused a total financial loss of $861,597.59. The court found that Clagg committed the worst form of the offense of aggravated arson, specifically noting the great economic harm and the fact that Clagg's behavior placed the lives of firefighters at risk.
 {¶ 12} Clagg appeals, raising the following assignments of error: "[I.] The trial court erred when it imposed the maximum term of imprisonment for the aggravated arson conviction. The reasons in support of the trial court's articulation of the statutory findings are insufficient and are not supported by the record. * * * [II.] The trial court erred when it sentenced Mr. Clagg to serve a prison term that exceeded minimum, concurrent terms of incarceration. * * * The sentence imposed was based on facts that were not found by a jury or admitted by Mr. Clagg, in contravention of his rights guaranteed by the Sixth
Amendment to the United States Constitution. * * *"
 II. {¶ 13} In his first assignment of error, Clagg contends that the trial court erred in imposing the maximum sentence for his aggravated arson conviction. Specifically, Clagg argues that the trial court improperly relied upon the risk of harm to the firefighters and his disability income in determining that he had committed the worst form of the offense. Clagg concedes that the trial court properly considered his prior criminal record but argues that his prior convictions for DUI, no operator's license, and misdemeanor theft, do not support the trial court's imposition of the maximum sentence. Ultimately, Clagg contends that, while the trial court properly considered the substantial economic harm caused by the fire, the trial court's improper reliance upon other factors warrants reversal of his sentence.
 {¶ 14} Pursuant to R.C. 2953.08(G)(2) we may increase, reduce, or otherwise modify a sentence that is appealed, or may vacate the sentence and remand the matter to the sentencing court for resentencing, if we clearly and convincingly find that: (a) the record does not support the sentencing court's findings; or (b) the sentence is otherwise contrary to law. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." State v. Eppinger (2001),91 Ohio St.3d 158, 164, quoting Cross v. Ledford (1954), 161 Ohio St. 469,477.
 {¶ 15} In reviewing a felony sentence, we do not substitute our judgment for that of the trial court, nor do we simply defer to its discretion. State v. Mustard, Pike App. No. 04CA724, 2004-Ohio-4917, at ¶ 19, citing State v. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806. Rather, we look to the record to determine whether the sentencing court: (1) considered the statutory factors; (2) made the required findings; (3) relied on substantial evidence in the record to support those findings; and (4) properly applied the statutory guidelines. Id. citing State v.Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11, citing Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.), Section 9.16.
 {¶ 16} Where an offender has not served a previous prison term, R.C.2929.14(B) creates a statutory presumption in favor of the shortest prison term authorized for the offense. The statute further provides that the presumption may be overcome if "the trial court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Id.
 {¶ 17} Thus, when a court imposes a sentence greater than the statutory minimum upon a felony offender who has never served a prison term, "the record of the sentencing hearing must reflect that the court found that either, or both, of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." State v.Edmonson (1999), 86 Ohio St.3d 324, 326. However, the statute does not require that the trial court state its reasons for making such a finding on the record. Id.
 {¶ 18} Here, the trial court found that the minimum sentence would demean the seriousness of the offense and would not adequately protect the public from future crimes. Based upon the trial court's detailed finding of the undisputed, substantial economic harm caused by the fire, in excess of $860,000, we cannot conclude that the trial court's finding is clearly and convincingly unsupported by the record or contrary to law.
 {¶ 19} R.C. 2929.14(C) only authorizes a trial court to impose the maximum sentence upon: (1) offenders who have committed the worst forms of the offense;[2] (2) offenders who pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. This statute embodies a public policy disfavoring maximum sentences except for the most deserving offenders.Edmonson at 328.
 {¶ 20} In Edmonson, the Ohio Supreme Court held that, in order to properly impose the maximum sentence upon an offender, a sentencing court must first find that the offender satisfied one of the criteria enumerated in R.C. 2929.14(C). Id. Then, pursuant to R.C. 2929.19(B)(2)(d), if the sentence is for one offense, and is the maximum sentence allowed for that offense, the sentencing court must "make a finding that gives its reasons for selecting the sentence imposed." Id. Similarly, R.C.2929.19(B)(2)(e) provides that the sentencing court must state its reasons for imposing the maximum term "[i]f the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree * * *."
 {¶ 21} We have previously held that, in deciding whether an offender has committed the worst form of the offense, a trial court should consider "the impact on the victim, the intent of the offender, the offender's position of responsibility, whether the offense was an organized criminal activity, and the totality of the circumstances, including any mitigating circumstances." State v. Jung, Washington App. No. 02CA40, 2003-Ohio-7346, at ¶ 19. (Citations omitted.) See, also, Griffin Katz, Ohio Felony Sentencing Law (2004 Ed.) 564, Section 7.4.
 {¶ 22} Clagg first contends that the trial court erred in considering his prior criminal record in determining that he had committed the worst form of the offense. An offender's prior criminal record may be relevant in determining the seriousness of the offense "because one who continues to offend after having been convicted and sentenced for a crime can be considered to have transgressed more seriously than one who has never been convicted or punished." Griffin Katz (2004 Ed.), at 565. Hence, the trial court could properly consider Clagg's criminal record.
 {¶ 23} However, Clagg's prior record was minimal — consisting of a DUI and no operator's license convictions, and a 1992 shoplifting charge for which no disposition was available. While the trial court stated that Clagg was on probation for a shoplifting offense when he committed the theft and aggravated arson, the PSI, and the trial court's sentencing entry, correctly reflect that the offense occurred one month after the offenses at issue here. Clagg's minimal prior record of traffic related offenses does not support the trial court's finding that he committed the worst form of aggravated arson.
 {¶ 24} Next, Clagg argues that the trial court erred in relying upon his disability and/or disability income to support the imposition of the maximum prison sentence. The transcript from the sentencing hearing reflects that, after discussing the economic damages and Clagg's prior record, the trial court stated: "I made some other notes. I wanted to see if there's anything else in — factually, I wanted to put down. Mr. Clagg is — is a disabled person. He does have income and disability."
 {¶ 25} Based upon the context of the trial court's statement, it does not appear to this court that the trial court relied upon Clagg's disability or his disability income to find that he committed the worst form of the offense. Rather, it appears that the court merely wished to make sure that there were no facts that it forgot to mention before it moved on to impose Clagg's sentence. The fact that the trial court did not mention Clagg's disability in its sentencing entry bolsters this interpretation. Thus, we find no error in the trial court's statement.
 {¶ 26} Next, Clagg contends that the danger to the firefighters could not serve as the sole basis for finding that his actions constituted the worst form of the offense because it was an element of the offense. R.C.2909.02(A)(1) defines the offense of aggravated arson, for which Clagg was sentenced, as knowingly "[c]reat[ing] a substantial risk of serious physical harm to any person other than the offender." Because the risk of harm to the firefighters was an element of the offense, we find that the trial court could not properly consider it as a factor justifying a greater than minimum sentence without explaining why the danger was something more than a required element of the offense. See, State v.Schlecht, Champaign App. No. 2003-CA-3, 2003-Ohio-5336, at ¶ 52, citingState v. Jones, Franklin App. No. 91AP-1183, 2002-Ohio-3725, at ¶ 18 (rejecting imposition of greater than minimum sentence where, among other things, trial court relied on conduct that was a necessary element of the charged offense); State v. DeAmiches (March 1, 2001), Cuyahoga App. No. 77609. To hold otherwise would create a presumption that all forms of aggravated arson constitute the worst form of the offense because they place firefighters in harm's way.
 {¶ 27} In determining that Clagg committed one of the worst forms of the offense, the trial court placed the greatest emphasis on the substantial economic damages caused by the fire. In his brief, Clagg concedes that the trial court properly considered the substantial economic damages and does not dispute the trial court's detailed recitation of the damages at his sentencing hearing or in the sentencing entry. Instead, Clagg contends that "the trial court's erroneous reliance on other factors that were either insufficient or were not supported by the record warrants reversing the maximum prison term in this case." Clagg also argues that, while the fire caused significant economic harm, the fact that insurance compensated the victims for much of that harm somehow lessened the severity of his offense.
 {¶ 28} We find that the trial court's findings regarding the substantial economic damages caused by the fire, alone, support the trial court's determination that Clagg committed the worst form of aggravated arson. Clagg does not dispute that the fire caused damages in excess of $861,000 and virtually destroyed five businesses. We are not convinced by Clagg's argument that the availability of insurance to compensate the victims, at least in part, for their economic losses lessens the severity of his offense. While insurance provided a means of compensation for some of the fire victims, it served merely to redistribute rather than to diminish the amount of economic harm caused by Clagg's actions. Hence, we cannot clearly and convincingly say that the record does not support that finding or that the sentence is otherwise contrary to law. Because the substantial economic damages alone support the trial court's finding that Clagg committed the worst form of the offense, we conclude that the trial court's purported reliance upon other insufficient or unsupported factors constitutes nothing more than harmless error. Crim.R. 52(A). Accordingly, we overrule Clagg's first assignment of error.
 III. {¶ 29} In his second assignment of error, Clagg argues that, under the United States Supreme Court's decisions in Blakely v. Washington (2004), 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 and United States v. Booker
(2005), 542 U.S. ___, 125 S.Ct. 738, ___ L.Ed.2d ___, the trial court erred in enhancing his sentence beyond the statutory minimum and imposing consecutive sentences based on factors other than those found by a jury or admitted by him.[3]
 {¶ 30} Clagg acknowledges that we have previously held that Blakely
and Booker do not apply to Ohio's sentencing scheme. State v. Scheer,158 Ohio App.3d 432, 2004-Ohio-4792, State v. Sideris, Athens App. No. 04CA37, 2005-Ohio-1055; State v. Hardie, Washington App. No. 04CA23, 2004-Ohio-7277, discretionary appeal allowed, 105 Ohio St.3d 1498,2005-Ohio-1666; State v. Wilson, Washington App. No 04CA18, 2005-Ohio-830;State v. Ward, Washington App. No. 04CA25, 2005-Ohio-1580. However, Clagg urges us to reconsider our prior holdings in light of several decisions in which the Eighth District Court of Appeals has reversed and remanded cases for resentencing in light of Blakely. See, e.g., State v. Moore,
Cuyahoga App. No. 83653, 2004-Ohio-5383; State v. Martin, Cuyahoga App. No. 83941, 2004-Ohio-5034; State v. Mason, Cuyahoga App. No. 84061,2004-Ohio-5388. Clagg also urges us to follow the lead of the First District Court of Appeals, reevaluate our previous decisions, and find that, in light of Blakely, Booker, and R.C. 2929.14(B), "the only prison term a sentencing court can impose on an offender who has not previously served a prison term, without making additional findings, is the minimum prison term allowed by law for the offense." See, State v. Montgomery,
Hamilton App. No. C-040190, 2005-Ohio-1018, at ¶ 9. See, also, State v.Bruce, Hamilton App. No. C-040421, 2005-Ohio-373.
 {¶ 31} The Ohio Supreme Court has accepted several discretionary appeals on this issue. See, e.g., State v. Quinones, Cuyahoga App. No. 83720, 2004-Ohio-4485, discretionary appeal allowed, 105 Ohio St.3d 1401,2005-Ohio-286, Ohio Sup. Ct. Case No. 2004-1771; State v. Foster, Licking App. No. 03CA95, 2004-Ohio-4209, discretionary appeal allowed,104 Ohio St.3d 1438, 2004-Ohio-7033, Ohio Sup. Ct. Case No. 2004-1568. InState v. Adkins, Athens App. No. 04CA34, 2005-Ohio-2577, ¶ 26, we expressed our intention to adhere to our holding in Scheer, supra, until the Ohio Supreme Court or United States Supreme Court rules otherwise. Therefore, we continue to hold that Ohio's sentencing statutes do not violate Blakely, and await the Ohio Supreme Court's ruling on this issue. Accordingly, we overrule Clagg's second assignment of error.
 {¶ 32} In sum, we find that the record does support the trial court's finding that Clagg committed the worst form of aggravated arson, and, therefore, supports the trial court's imposition of the maximum sentence for the offense. Additionally, we continue to hold that Ohio's sentencing statutes do not violate Blakely. Accordingly, we overrule Clagg's assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed. Appellee shall recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and McFarland, J.: Concur in Judgment and Opinion.
[1] We note that this statement by the trial court is incorrect because the shoplifting offense in West Virginia occurred after the offenses at issue here. The trial court corrected this error in its sentencing entry.
[2] The General Assembly's use of the plural indicates that it contemplated that more than one situation could constitute one of the worst forms of the offense. State v. Patterson (Sept. 21, 1998), Washington App. No. 97CA28; see, also, State v. Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11.
[3] We note that Clagg challenges the trial court's authority to make findings beyond those made by a jury or admitted by him. However, Clagg does not allege or argue that the trial court's findings fail to support its imposition of consecutive sentences pursuant to R.C. 2929.14(E)(4).