[Cite as *State v. Lampert*, 2024-Ohio-400.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

JOSEPH LAMPERT,

        Defendant-Appellant.

**CASE NO. 2023-L-077**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2023 CR 000480

## **O P I N I O N**

Decided: February 5, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Joseph R. Klammer*, The Klammer Law Office, LTD., The Historic Mentor Center Street School, 7482 Center Street, Unit 6, Mentor, OH 44060 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Joseph Lampert, appeals from his consecutive sentences for Pandering Sexually Oriented Matter Involving a Minor and Failure to Notify of Change of Email Address or Identifiers in the Lake County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2} On April 28, 2023, an information was filed charging Lampert with Pandering Sexually Oriented Matter Involving a Minor or Impaired Person, a felony of the third degree, in violation of R.C. 2907.322(A)(5); and two counts of Failure to Notify of Change of Email Address or Identifiers, felonies of the fourth degree, in violation of R.C. 2950.05(F)(1).

**{¶3}** On May 11, 2023, a plea hearing was held and a written plea agreement was filed. Lampert entered a plea of guilty to those charges alleged in the information. The State indicated it would have proven that Lampert was in possession and control of multiple images of preadolescent children engaged in sexual activity and that he had been convicted previously of pandering in 2018. It also would have proven that he used social media accounts and e-mail addresses without providing notification of these accounts as required following his prior conviction. The court found him guilty of the offenses.

**{¶4}** A sentencing hearing was held on June 21, 2023. Defense counsel requested that the court continue the hearing for 60 days to allow Lampert to enter an inpatient recovery center, which request the court denied. Counsel emphasized that two doctors recommended that Lampert should receive treatment rather than imprisonment. Dr. Epstein's letter was presented where he discussed Lampert's mental health concerns, including bipolar disorder. He noted that Lampert had previously been successful with a substance abuse rehabilitation program following his first convictions for pandering and believed that treatment would be more effective than incarceration. Dr. Epstein indicated that Lampert's prescribed medicine can become ineffective, which resulted in his use of methamphetamine. A psychological evaluation completed by Dr. Rindsberg concluded that Lampert should receive long-term residential treatment but that his prognosis is poor and his difficulties with child pornography had continued despite his prior outpatient treatment. Counsel also emphasized Lampert's family ties and support. Lampert did not give a statement. The State recommended a prison sentence based on his prior conviction.

**{¶5}** The trial court noted that Lampert had been convicted of Pandering Sexually Oriented Material in 2018 and was placed on community control. It concluded that Lampert

2

had "a unique opportunity in 2018 after pleading guilty to those two counts and was afforded the opportunity to get the help he needs for * * * bipolar disorder, for his drug addiction, the methamphetamine and marijuana and for the sex offenses." It noted that he had been under the care of Dr. Epstein for many years and had the ability to receive treatment prior to committing these offenses: "the time to address this to prevent having to be here now is in 2018, 2019, 2020, and 2021 when he was on community control." It recognized the doctors' statements but found that Lampert should have taken responsibility to utilize treatment rather than turning to illegal drugs. It found Lampert's violation of his reporting requirements to cover up his actions to be "disturbing." It observed that there were victims in various countries throughout the world and some victims in the photographs were toddlers.

{¶6} The court stated that it had considered the PSI, the doctors' reports, and the relevant sentencing statutes. It ordered Lampert to serve consecutive terms of five years in prison for Pandering Sexually Oriented Matter Involving a Minor and 18 months in prison on each count of Failure to Notify of Change of Email Address or Identifiers, for a total term of eight years. The trial court memorialized the sentence in a June 22, 2023 entry, which stated the consecutive sentencing findings listed in R.C. 2929.14(C)(4).

{¶7} Lampert timely appeals and raises the following assignment of error:

{¶8} "Trial court erred in sentencing appellant to consecutive prison terms."

{¶9} Lampert argues that there is no evidence of any quality or quantity to support consecutive sentences and that the trial court did not cite evidence to support its consecutive sentences.

{¶10} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing

3

court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * *." *Id.*; *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶11} A court may order consecutive prison terms if it finds them "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and finds any of the R.C. 2929.14(C)(4)(a)-(c) factors are present. R.C. 2929.14(C)(4). The pertinent factors here are (b) and (c): "At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses * * * was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct" and "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." "To impose consecutive terms, the court 'is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry.'" *State v. Elliott*, 11th Dist. Trumbull No. 2021-T-0045, 2023-Ohio-412, ¶ 9, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶12} We initially note that, although Lampert cited *State v. Gwynne*, ___ Ohio St.3d ___, 2022-Ohio-4607, ___ N.E.3d ___ ("*Gwynne IV*") for the proposition that this court should conduct a de novo review for a consecutive sentence, this opinion was subsequently

4

vacated by the Supreme Court upon reconsideration in *State v. Gwynne*, ___ Ohio St.3d ___, 2023-Ohio-3851, ___ N.E.3d ___ ("*Gwynne V*"), which Lampert recognized in his reply brief. In *Gwynne V*, a plurality of the court stated that "[a]ppellate review turns on whether the trial court's findings are clearly and convincingly not supported by the record, and if the evidence supports the trial court's consecutive-sentence findings, the analysis ends there." *Id.* at ¶ 24. Further, as the Supreme Court has previously concluded, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes * * *." *Marcum* at ¶ 1.

{¶13} In his reply brief, Lampert argues that the "consecutive sentence analysis in [*Gwynne IV*], remains the law," such as its holdings in relation to consideration of the aggregate term to be imposed (R.C. 2929.14(C)(4)(c) "require[s] a trial court to consider the number of consecutive sentences that it will impose on a defendant along with the aggregate prison term") and allowing an appellate court to substitute its judgment for that of the trial court (an appellate court is "authorized to substitute its judgment for the trial court's judgment if [it] has a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences"). *Id.* at ¶ 15 and 29. Citing to *Gwynne IV*, Lampert argues that the lower court's findings were not supported by the quality and quantity of the evidence and that the record merely having "some evidence" is not sufficient to support the court's findings. While we observe that there was only a plurality opinion issued in *Gwynne V*, with one justice issuing a concurring opinion and three concurring in the court's lead opinion, the court granted the motion for reconsideration and vacated *Gwynne IV*.

5

**{¶14}** In any event, after considering the record before the trial court, we hold that there is an evidentiary basis, supported by evidence which is more than sufficient in quality to sustain the required finding for multiple consecutive sentences as set forth in R.C. 2953.08(G)(2)(a); this court cannot "clearly and convincingly find * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14."

**{¶15}** The lower court made consecutive sentencing findings on the record at the sentencing hearing and in its judgment entry of sentence. Lampert first contends that the finding that the harm caused by the conduct was "great or unusual" was not supported by the record because the harm was no greater than in any occurrence of the offenses.

**{¶16}** In determining that the harm was great and unusual, the trial court observed that there were multiple victims and emphasized the harm caused by child pornography, where those depicted in the images or videos are revictimized when the material is repeatedly downloaded, viewed, and shared. It has been held that revictimization of children through pandering sexual material involving minors causes great or unusual harm. *State v. Shiveley*, 12th Dist. Clermont No. CA2022-04-017, 2022-Ohio-4036, ¶ 11-19. Significantly, the PSI's recounting of the offenses here reveals that Lampert had large numbers of images and videos that he had in his possession and control on social media, which depicted young, prepubescent children, including toddlers. Further, although the harm caused by failing to provide notification of identifiers is more difficult to assess, the record demonstrated not only that Lampert failed to disclose social media and e-mail information as required given his prior conviction for pandering but that he used several different social media identifiers, likely in an attempt to cover up his persistent illegal activity and possession of many child pornography images/videos, which furthered his ability to continue the revictimization.

6

Case No. 2023-L-077

{¶17} Nonetheless, even if we clearly and convincingly concluded that the record did not support this finding given the lack of evidence relating to the specific harm suffered by the individual victims, the trial court also made the R.C. 2929.14(C)(4)(c) finding that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." "[T]he plain language of the statute requires that only one of these three elements [R.C. 2929.14(C)(4)(a) through (c)] need be found, which is evident from the statute's use of the word 'any.'" *State v. Wauer*, 11th Dist. Trumbull No. 2016-T-0043, 2017-Ohio-1337, ¶ 27.

{¶18} We observe that, although the court made the finding that Lampert's criminal history necessitated consecutive sentences to protect the public in the sentencing entry, the court did not use this exact wording at the sentencing hearing. However, at the hearing, the judge made the specific finding that there was a need to protect the public and immediately after emphasized Lampert's criminal record. It has been held that where the trial court considers the defendant's criminal record in relation to the danger posed to the public, the failure to utilize the precise wording of R.C. 2929.14(C)(4)(c) does not constitute a lack of compliance with the requirement to make the necessary findings. *State v. Olp*, 11th Dist. Ashtabula Nos. 2015-A-0033 and 2015-A-0034, 2016-Ohio-3508, ¶ 17-18.

{¶19} There is no question that the record demonstrated Lampert has past convictions for two pandering offenses. The commencement of the period during which the present offenses were alleged to have taken place began five days before his community control was terminated in the previous pandering case. His repeat offenses of pandering and failure to respond to past treatment demonstrate the significant risk he would continue to participate in such conduct, posing a danger to the public as a whole.

7

{¶20} Lampert argues that consecutive sentences were not "necessary" to protect the public because treatment would better address his mental health and substance abuse disorders. Although Lampert contends that treatment will protect the public by remedying these conditions, he had been undergoing treatment with his doctor for a period of time, had an opportunity to seek treatment after his prior conviction for pandering when he was given community control, and yet repeated his conduct of accessing and sharing child pornography. As noted by Dr. Rindsberg, Lampert's difficulties with child pornography continued despite his prior outpatient treatment. The report of Dr. Epstein referenced by Lampert indicates that his prescribed medicines began to lose efficacy in August 2021, when he began to take methamphetamine and marijuana, but this serves to demonstrate that Lampert chose to disengage from treatment when he experienced difficulties, raising concerns regarding his future conduct. Under these circumstances, it was reasonable for the trial court to conclude that consecutive prison terms were necessary to protect the public given Lampert's history of criminal conduct. *See State v. Thompson*, 11th Dist. Lake No. 2003-L-052, 2004-Ohio-2925, ¶ 34 ("appellant's mental health issues do not mitigate against the imposition of consecutive sentences" and his likelihood of reoffending when under stress demonstrated that his mental health issues "actually provide strong support for the imposition of consecutive sentences"). Further, the decision to order multiple consecutive sentences, resulting in an aggregate term of eight years in prison, is consistent with Lampert's repeated conduct of pandering and the acts he took to evade detection of such activity.

{¶21} Lampert also argues that the court should not have considered Lampert's prior conduct or the harm posed to the victims, as these are both factors or elements of the

offense of Pandering, observing that R.C. 2907.322(A)(5) is a felony of the third degree (rather than a fourth-degree felony) due to an offender's prior conviction for the same offense and harm to a victim is a necessary part of that offense. In support, he cites *State v. Clegg*, 4th Dist. Washington No. 04CA30, 2005-Ohio-4992, which held that the trial court could not consider an element of an offense as a factor justifying a greater than minimum sentence "without explaining why the danger was something more than a required element of the offense." *Id.* at ¶ 26. He also cites *State v. Stroud*, 7th Dist. Mahoning No. 07 MA 91, 2008-Ohio-3187, wherein the court reached a similar holding, also finding that an element of the offense, i.e., that a life was taken in a voluntary manslaughter case, cannot be used to find that the offender committed "the worst form of the offense." *Id.* at ¶ 52. As Lampert recognizes, these opinions do not relate to consecutive sentences but address claims of an improper maximum sentence. Nonetheless, he argues that "where the offense itself already incorporates the consecutive sentence justification of the trial court, it should not also serve to satisfy R.C. 2929.14(C)(4)."

{¶22} We recognize that, in *State v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063 and 2018-L-064, 2019-Ohio-2505, this court held that the finding that an appellant was a predator based on his relationship to the victims as their teacher, an element of sexual battery, could not be considered to elevate his sentence or order a consecutive sentence. *Id.* at ¶ 35. In *Polizzi*, the court considered, in ordering a consecutive sentence, the fact that the defendant was a teacher, the very act that also made his conduct a criminal offense. In contrast, Lampert's act of sharing child pornography made his conduct criminal while the fact that he had a prior conviction merely enhanced the degree of the offense. Significantly, unlike in *Polizzi*, Lampert's prior criminal conduct is specifically delineated as a relevant consideration

9

under the terms of the consecutive sentencing statute, which allows the court to make a finding that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."  R.C. 2929.14(C)(4)(c).  For this reason, and in the absence of authority prohibiting the court from ordering consecutive sentences where the offense has been enhanced due to prior similar offenses, we do not find the lower court was prohibited from considering Lampert's past criminal conduct in ordering consecutive sentences.  *See State v. Dixon*, 10th Dist. Franklin No. 17AP-884, 2018-Ohio-3759, ¶ 12 (upholding consecutive sentences where the level of offense was escalated to felony domestic violence and the lower court considered the defendant's pattern of past assaults/domestic violence).  As to the harm caused to the victims, it is not a specific element of the offense of Pandering and, as noted above, even if great or unusual harm was not demonstrated, the finding of the presence of the R.C. 2929.14(C)(4)(c) factor alone justifies the court's order of consecutive sentences.

{¶23}  The sole assignment of error is without merit.

{¶24}  For the foregoing reasons, Lampert's sentences for Pandering Sexually Oriented Matter Involving a Minor or Impaired Person and Failure to Notify Change of Email Address or Identifiers in the Lake County Court of Common Pleas are affirmed.  Costs to be taxed against appellant.


JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.


10