[Cite as *State v. Allen*, 2019-Ohio-730.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28051 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-3815 |
| | : | |
| SEAN ALLEN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of March, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

REBECCA BARTHELEMY-SMITH, Atty. Reg. No. 0003474, 7821 North Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the June 29, 2018 Notice of Appeal of Sean Allen. Allen appeals from the trial court's May 31, 2018 judgment entry revoking community control sanctions that were imposed when Allen was convicted of assault on a police officer and sentencing him to 18 months in prison. We hereby affirm the judgment of the trial court.

{¶ 2} Allen was originally charged on December 11, 2016, in the Miamisburg Municipal Court, by way of complaint, with two counts of assault on a police officer and one count of escape. Allen subsequently signed a waiver of preliminary hearing and was bound over to the Montgomery County Common Pleas Court. He was indicted on December 30, 2016, on two counts of assault on a police officer, in violation of R.C. 2903.13(A), one count of escape, in violation of R.C. 2921.34, and one count of aggravated possession of drugs (psilocin), in violation of R.C. 2925.11(A).

{¶ 3} On February 23, 2017, pursuant to a plea agreement, Allen pled guilty to one count of assault on a police officer, and the remaining charges were dismissed. Allen was sentenced to community control sanctions for a period not to exceed five years.

{¶ 4} On June 30, 2017, Allen was issued a notice of a community control revocation hearing, which required him to appear in court on July 13, 2017. On July 3, 2017, Allen filed a motion for continuance, which stated that he was receiving inpatient treatment at Access Hospital until July 30, 2017. The court granted the motion, and the hearing was held on August 17, 2017.

{¶ 5} On August 23, 2017, the court issued an entry continuing Allen's community control with additional sanctions, namely requirements that he enter residential treatment

for 28 to 30 days before August 31, 2017, that he appear for a status hearing two weeks after completing treatment, and that he be placed on a "No Breaks" status.

{¶ 6} On January 2, 2018, the court issued another notice of a community control sanctions revocation hearing. After a hearing, on February 7, 2018, the court issued an entry adding a sanction requiring Allen to enter and complete the MonDay Program.

{¶ 7} On May 10, 2018, another notice of a community control sanction revocation hearing was issued, alleging a violation based on the following rule and circumstances:

Rule #10 "During my period of supervision, the Court may order me to serve a period of confinement (not to exceed six (6) months) in the MonDay Community Correctional Facility or other residential sanction in accordance with ORC 2929.16 (Community Residential Sanctions)." You violated this condition when you attempted to have a visitor smuggle, in her bra, illegal drugs into the MonDay Program during visitation. After refusing to have a hearing about this rule violation, you were unsuccessfully discharged from the MonDay Program on May 7, 2018.

{¶ 8} A revocation hearing was held on May 31, 2018. At the start thereof, the court indicated to the parties that the Rules of Evidence did not apply to the proceeding, and that it would "entertain hearsay evidence as a part of this proceeding," as allowed by Evid.R. 101(C)(3).

{¶ 9} At the hearing, Montgomery County Adult Probation Officer Timothy Bowser testified that he supervised Allen beginning March 23, 2017, after his assault conviction. Bowser identified as State's Exhibit 1 a copy of Allen's general conditions of supervision. Bowser testified that he went over each term and condition with Allen, and that Allen

initialed next to each one to indicate his understanding. Bowser identified Allen's signature on the form as well as his own. Bowser testified that Allen violated Rule Number 10, as set forth above. Bowser testified that Allen was unsuccessfully discharged from the MonDay program on May 7, 2018 "due to behaviors that could potentially risk the safety or security of the MonDay facility." Specifically, Bowser testified that "[t]here was letter correspondence requesting a female visitor to bring in narcotics into the MonDay Program."

**{¶ 10}** The following exchange occurred:

Q (by Prosecutor). Do you know anything about the individual who is receiving those letters?

A (Bowser). The receiving of those letters, I do not know. * * *

Q. * * * And had you obtained copies of these letters?

A. Yes.

* * *

Q. Okay, Mr. Bowser. I'm handing you what's been previously marked as State's Exhibit 2. * * *

* * *

Q. Is that, to your knowledge, a fair and accurate depiction of the letters you received in this case as it relates to what Mr. Allen had sent from MonDay?

A. Yes.

Q. And going back, you said there was a letter indicating that Mr. Allen wished to have drugs brought into MonDay?

A. Yes.

Q. And is that one of the rules of the MonDay Program that illegal drugs are not to be brought in?

A. I would think so.

Q. * * * And do you have any knowledge from anyone at MonDay about what Mr. Allen intended to do with those narcotics?

A. Just from the letters.

[DEFENSE COUNSEL]: Objection, speculative.

THE COURT: Based on the evidence available to Mr. Bowser, and limited to that, the objection will be overruled.

[BOWSER]: Just in the letters that where he was corresponding [sic].

BY [PROSECUTOR]:

Q. * * * And have you had the opportunity to review the discharge summary from - -

A. Yes.

Q. * * * MonDay? Okay.

And were there any additional reasons related to Mr. Allen's discharge from the MonDay Program?

A. Nothing that would have caused his discharge.

{¶ 11} Bowser stated that another probation officer spoke to Allen about the discharge. When asked what Allen said about his discharge, Bowser responded, "To my knowledge it was just a misunderstanding between him and the MonDay Program."

{¶ 12} The following exchange occurred on cross-examination:

Q (by Defense Counsel). Sir, so you've never spoken to Sean Allen in regard to

those letters in - -

A.   No, I did not.

Q. - - Exhibit 2?

Now, in regard to these letters, how did you get a copy of these letters?

A.   The MonDay Program sent them to me.

Q.   So you don't know where they came from?

A.   The MonDay Program.

Q.   Other than the MonDay Program?

A.   Other than the two letters on the back, and of the might be juvenile [sic], those came from his locker, but the other ones came - -

Q.   Okay.

A.   – from the MonDay.

Q.   And the last two are letters from Bianca * * *?

A.   Yeah.

Q.   No letters from Mr. Allen - -

A.   No.

Q. - -   is that correct?

A.   Those are letters from Bianca to Mr. Allen.

* * *

Q.   * * * Let me show you what's been marked as Exhibit 2.

A.   The last four pages were mailed to Mr. Allen - -

Q.   Okay.

A.    - - from Bianca, I think.

Q. And they were supposed to be found in his locker?

A. Yes.

Q. * * * These are letters to Mr. Allen?

A. Yes.

Q. And these other letters that you received from MonDay, they weren't signed or anything; is that correct?

A. * * * I don't recall if there's - -

Q. Do you want to look? I'll hand you, again, what's been marked as - -

* * *

Q. - - State's Exhibit 2.

A. I do not see a signature that I've seen before. I don't see - - name of this (indiscernible).

Q. Do you seen any names on these letters at all?

A. No.

Q. And do you know - - they weren't in Mr. Allen's locker either, were they?

A. No, they weren't.

Q. * * * So you don't know who wrote these letters, do you?

A. I can't remember what is says on the first page of who sent them in.

Q. * * * I'm showing you again State's Exhibit 2.

A. The mother of the female was * * * [A.L.] who sent these in.

Q. * * * So you don't have any evidence to show that Mr. Allen wrote these letters himself, do you?

A. No.

Q.  Is that a no?

A.  That's correct.

{¶ 13}  At the conclusion of the hearing, the court stated:

And so with that the Court will close the evidentiary record as to the purposes of this hearing, which is designed to determine whether or not there are substantial grounds to determine that Mr. Allen has violated the terms and conditions of his supervision.  And in that regard the record should reflect that he was ordered by this Court to successfully attend and complete the MonDay Program, and it is the case that he was unsuccessfully discharged from that program.

Mr. Allen has had opportunities for treatment at various agencies, obviously having been provided the opportunity for the MonDay Program, Access Ohio, Beckett Springs, and other substance abuse and mental health facilities.

The Court has provided Mr. Allen with multiple opportunities for pursuing treatment, both in terms of substance use and mental health, and the Court would find that there is evidence, by virtue of his unsuccessful discharge from MonDay, that he has violated the terms and conditions of his community supervision.

The Court would note that it is the unsuccessful discharge from the MonDay Program that's the basis for the Court's ruling in this regard.  The court would note, just as an aside, that there are letters found in Mr. Allen's locker from the individual known as Bianca, and those letters expressly

state that she is still in high school and is only 17 years old.

And the court would note that under special terms of conditions of his sex offender supervision, provision number 3, he's not to have any contact or relationship with minors. And so that's a separate concern, but not the concern that is driving the revocation from supervision; I just note that.

\* \* \*

But the basis for the Court's conclusion that Mr. Allen has violated the terms and conditions of his supervision, is the fact that the MonDay Program determined that it was appropriate to unsuccessfully discharge him. And it was the Court's mandate that he successfully complete that program, and he did not do so.

Thus, the court found that Allen had violated the terms of his community control, and it imposed an 18-month prison sentence.

{¶ 14} Allen asserts a single assignment of error on appeal, as follows:

THE LOWER COURT ERRED IN [REVOKING] APPELLANT'S COMMUNITY CONTROL.

{¶ 15} Allen asserts that there was insufficient evidence in the record to support the court's finding "by substantial and competent evidence." According to Allen, Bowser "did not testify to personal knowledge and could not personally identify any of the writings which were supposedly contained in Exhibit 1 and 2 as of the Defendant/Appellant. All he could testify to was that Sean Allen was discharged from the MonDay Program." Allen argues that Bowser stated "that he [did] not have any evidence that Sean Allen wrote [the]

letters which were the subject of the discharge."

{¶ 16} The State responds that the trial court did not err in revoking Allen's probation, because this Court "has previously held that the state met its burden of proof where it presented indirect evidence of the underlying reason for MonDay program termination." The State cites *State v. Henry*, 2d Dist. Montgomery No. 12080, 1991 WL 10963 (Jan. 28, 1991). Specifically, the State asserts:

> Here, Ofc. Bowser testified that Allen had been ordered to successfully complete the MonDay program, but had been discharged for violating MonDay rules. This is not hearsay evidence, but direct evidence. Ofc. Bowser further testified that MonDay sent him letters that were the basis for Allen's dismissal from the program. This, again, is not hearsay. Ofc. Bowser testified that MonDay had told him the letters had been retrieved from Allen. While this is indirect hearsay evidence addressing the foundations of Allen's dismissal, it is still admissible and the trial court did not err in considering the content of the letters or the testimony that the letters had come from Allen. The State established by a preponderance of the evidence that Allen violated Rule 10 of his community control sanctions.
>
> * * *

{¶ 17} In reply, Allen asserts that "substantial evidence was not provided at the community control hearing. The probation officer merely knew that Sean Allen was discharged from the MonDay Program."

{¶ 18} As this Court has previously noted:

> "The right to continue on community control depends on compliance

with community control conditions and is a matter resting within the sound discretion of the court." *State v. Schlecht,* Champaign App. No. 2003-CA-3, 2003-Ohio-5336, ¶ 7. Accordingly, we review the trial court's decision to revoke a defendant's community control for an abuse of discretion. *State v. Brown,* Montgomery App. No. 22467, 2008-Ohio-4920, ¶ 9. Such decision is an abuse of discretion if no sound reasoning process supports the decision. *Id.; State v. Picklesimer,* Greene App. No. 06-CA-118, 2007-Ohio-5758, ¶ 28.

Because a community control violation hearing is not a criminal trial, the State need not prove a violation beyond a reasonable doubt. *State v. Cofer,* Montgomery App. No. 22798, 2009-Ohio-890, ¶ 12. "The State need only present substantial evidence of a violation of the terms of a defendant's community control." *Id.*

* * *

The rules of evidence do not apply to community control revocation hearings and, therefore, hearsay is admissible at such hearings. *State v. Dunning,* Greene App. No. 08 CA 07, 2009-Ohio-691, ¶ 10. Nevertheless, in some circumstances, the admission of hearsay evidence at a revocation hearing can deny the defendant his due process right to confront and cross-examine adverse witnesses. *Id.*

*State v. Brandon*, 2d Dist. Montgomery No. 23336, 2010-Ohio-1902, ¶16-17, 19.

{¶ 19} As this Court noted in *State v. Bialek,* 2d Dist. Montgomery No. 12323, 1992 WL 28146, *1:

* * * The state has an overwhelming interest in being able to revoke probation and imprison a convicted felon without the burden of a new criminal trial if, in fact, he has failed to abide by the conditions of his probation. What is needed is an informal hearing structure to assure that the finding of a violation will be based upon verified facts and that the exercise of discretion will be informed by an accurate knowledge of the probationer's behavior. This may be a narrow inquiry. The process should be flexible enough, upon a showing of good cause, to consider evidence, including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

{¶ 20} We have reviewed State's Exhibits 1 and 2. Bowser identified his signature on Exhibit 1 and testified that he went over the conditions of community control with Allen; the tenth rule is set forth above, as Bowser testified. The form reflects that Allen initialed each condition and also signed the form.

{¶ 21} There are several letters in State's Exhibit 2. There is a typed letter dated April 26, 2018, which reads:

> Mr. Bell,
>
> Per our conversation this morning, I am faxing you pages from the letters that my daughter received from Mr. Allen.
>
> I am also sending you a copy of the letter that I am mailing to Mr. Allen telling him to no longer contact my daughter and no more letters.
>
> These letters are very disgusting and inappropriate. My daughter is only 19 years old (not 21 as he thinks).

I no longer want any contact with Mr. Allen for myself or my daughter.

* * *

* * * In these letters he talks about selling drugs before he got there and how he intends to sell drugs when he gets out.

He also wanted my daughter to smuggle acid in for him. * * *

**{¶ 22}** There is a typed letter dated April 25, 2018, and it is addressed to "Sean Allen" and signed by "A.L." It provides as follows:

I am [M.'s] mother.

DO NOT send any more letters to her.

She will have no contact with you and you are to have no contact with her.

This is for now and in the future. NO CONTACT.

I have informed the proper authorities about this matter.

**{¶ 23}** There are also six sexually explicit, handwritten, unsigned letters that appear to have been written by the same person; these letters do not identify the recipient. These letters total 12 pages and are dated April 5, April 8, April 11, April 17, and April 18, 2018. The name "M." appears repeatedly in the body of these letters. In the letter dated April 11, 2018, the name "M." appears, along with, "Also, please bring me some acid." In the letter dated April 17, 2018, the name "M." appears, along with, "Please bring daddy some acid I'll worship you forever," and "Tbh[1] I would like if you bring some acid in your bra for me. Reason being psychadelics [sic] have always helped me dig deeper into my issues." All of the above letters reflect at the top that they were sent via fax on April 27,

---

[1] "Tbh" is an abbreviation for "to be honest."

2018, by "A.L." from a number in the 937 area code.

{¶ 24} Finally, there are two letters, one dated February 22, 2018 and the other undated, that are addressed to "Sean" and signed "Love, Bianca." There is a letter dated March 23, 2018, without a recipient's name and signed "Love, Bianca," and another letter of the same date addressed to "Sean" that is unsigned. These last four letters appear to be handwritten by the same person, and they do not indicate that they were sent via fax.

{¶ 25} Having reviewed the record, we see no abuse of discretion and conclude that the State presented substantial evidence to support the revocation of Allen's community control. Bowser had personal knowledge that Allen, whom he advised of the terms and conditions of his community control and supervised, was terminated from the MonDay Program. Allen was required to successfully complete the program. Bowser testified that he learned that Allen engaged in "behaviors that could potentially risk the safety or security of the MonDay facility," namely "letter correspondence requesting a female visitor to bring in narcotics into the MonDay Program." Bowser received the incriminating letters that were attributed to Allen from the Monday Program, asking "M." to bring "acid" to him, in violation of the MonDay Program rules. The letters suggest that Allen wanted the drugs for his personal use (also in violation of his community control sanctions). Bowser stated that he reviewed Allen's discharge form and there were no additional reasons related to Allen's discharge from the program. We note that Allen's May 10, 2018 notice of revocation indicated that he had refused to participate in a hearing at the MonDay Program regarding the violation. While Bowser did not observe Allen write the incriminating letters, "[a]s a practical matter, it would be impossible in many cases to present the court with eyewitnesses to the actual incident that is the basis of a

claimed rules infraction." *Henry* at *3. For the foregoing reasons, Allen's sole assignment of error is overruled.

{¶ 26} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Rebecca Barthelemy-Smith
Hon. Mary Lynn Wiseman