[Cite as *State v. Miller*, 2023-Ohio-1159.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29571 |
| | : | |
| v. | : | Trial Court Case No. 2020 CR 03530 |
| | : | |
| DAVAUN A. MILLER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 7, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

ROBERT ALAN BRENNER, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Davaun A. Miller appeals from the trial court's revocation of community control and its imposition of a four-to-six-year prison sentence for his robbery conviction.

{¶ 2} Miller challenges the factual basis for the alleged community-control violations. Specifically, he asserts that he did not own a gun found in a vehicle he was

driving and that he did not steal items from a Walmart store. Miller also contends the trial court misinformed him about his post-release control obligation at sentencing, advising him that he "may" be required to serve a term of post-release control for his second-degree-felony robbery conviction.

{¶ 3} We conclude that uncontroverted revocation-hearing testimony provided a substantial basis for the trial court to find community-control violations. The record also demonstrates that the trial clarified Miller's post-release control obligation and correctly advised him that it was mandatory upon his release from prison. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} A grand-jury indicted Miller on two counts of robbery and one count of felony theft. Miller later entered a negotiated guilty plea to one count of robbery, a second-degree felony, in exchange for dismissal of the other charges. The trial court sentenced him to community control sanctions in April 2021.

{¶ 5} A notice of revocation was filed in December 2021. Thereafter, an amended revocation notice was filed in July 2022. It alleged that Miller had violated rule number one of his community control by being charged with felony theft. It alleged a second violation of rule number one based on a separate incident involving Miller's arrest for having a weapon while under disability and improper handling of a firearm in a motor vehicle. Finally, it alleged a violation of rule number eight based on Miller's being found in possession of ammunition.

{¶ 6} The alleged violations proceeded to an August 23, 2022 hearing. The State

called two witnesses. The first was Nyema Cumberbatch, a Dayton police officer. She testified that she received a dispatch on the evening of December 12, 2021, about a shot being fired near Salem Avenue. According to Cumberbatch, police made a felony traffic stop of a U-Haul truck in connection with the incident. Miller was the driver of the truck. Upon searching the vehicle, police found a firearm and a loaded magazine in the center console between the driver's and passenger's seat. While being transported to jail, Miller acknowledged his awareness of the firearm. He stated that the weapon belonged to his cousin, who had fired it on Salem Avenue.

{¶ 7} The second witness was Cody Sanders, an asset-protection investigator for Walmart. Sanders testified that on November 18, 2021, he discovered that Miller was in Walmart's back room wearing a vest and falsely claiming to be an employee. On the sales floor, Sanders then watched Miller load two air mattresses and a sound bar onto a cart. When confronted, Miller explained that he worked "for illegal DoorDash" and that he was purchasing items for customers. Miller proceeded to pay for one of the air mattresses in the electronics department. He then took the three items past all points of sale and out the front door without paying for the second air mattress or the sound bar. When confronted outside, Miller initially repeated that he worked "for illegal DoorDash or HOODUBER." But he eventually acknowledged stealing one air mattress and the sound bar, which together had a value of around $200. Later that day, a genuine Uber driver reported having seen Miller walk out of Walmart with three televisions worth $1,500 and load them into a vehicle before re-entering the store to steal the air mattress and the sound bar. Sanders reviewed a security video and watched Miller load the televisions

onto a cart and leave the store without paying for them. Following Sanders testimony, Miller declined to testify on his own behalf and did not present any evidence.

{¶ 8} The trial court then made the following findings in support of revoking community control and imposing a four-to-six-year prison term:

* * * The Court finds that the Defendant, Mr. Miller, violated rule 1 of the terms of his CCS sanctions, in that [the] Court finds that he violated rule 1 due to receiving charges for theft in an amount of $1,000 or greater, a felony of the fifth degree.

The Court further finds probable cause to believe that the Defendant violated a second rule. That is the requirement to refrain from violating any federal, state, or city law and to get in touch immediately with a probation officer if arrested or questioned by a law enforcement officer, having been arrested for the offense of having weapons while under disability, an F3, and improper handling of a firearm in a motor vehicle, a felony of the fourth degree.

And the Court also finds probable cause to believe that the Defendant violated rule 8, which I believe was listed on the original conditions of CCS. That is, the Defendant could not possess stolen property or contraband, including ammunition, explosives, or explosive devices, because ammunition was recovered from his vehicle.

Therefore, considering the purposes and principles of sentencing, the seriousness and recidivism factors of the Ohio Revised Code, including

the minimum sanctions to accomplish these purposes without unnecessarily burdening government resources, the Court sentences the Defendant as follows: to a term of prison, which shall be a minimum of four years [to] a maximum of six years. That's an indefinite prison sentence.

Following—sir, following your release from prison, you may be required to serve a period of post-release control under the supervision of the Adult Parole Authority. And for this offense—that's the F2—that's 18 months mandatory supervision with a maximum of three years at the discretion of the Adult Parole Authority. * * *

Transcript at 30-31.[1]

{¶ 9} The trial court journalized Miller's sentence in an August 23, 2022 judgment entry.

## II. Analysis

{¶ 10} In his first of two assignments of error, Miller contends the trial court erred in revoking community control "when the gun was not his and he did not steal from Walmart." He claims the firearm and magazine found in the U-Haul were never "tied to" him. He also cites his assertion that the gun belonged to his cousin, who had fired the shot. With regard to the Walmart thefts, Miller maintains that he was "just picking up items

---

[1] We recognize that the trial court characterized the hearing as a "probable-cause hearing" and proceeded to find probable cause to believe Miller had violated the conditions of his community control. It appears, however, that the parties may have intended the August 23, 2022 hearing to be a combined probable-cause hearing and final revocation hearing. Regardless, Miller has not raised the nature of the hearing as an issue on appeal. Therefore, we have no occasion to address whether the trial court properly revoked community control after making "probable cause" findings.

that others had paid for as part of his HOODUBER business."

{¶ 11} Upon review, we find that the record supports the trial court's revocation decision. " 'The right to continue on community control depends on compliance with community control conditions and is a matter resting within the sound discretion of the court.' " *State v. Allen*, 2d Dist. Montgomery No. 28051, 2019-Ohio-730, ¶ 18, quoting *State v. Schlecht*, Champaign No. 2003-CA-3, 2003-Ohio-5336, ¶ 7. "Because a community control violation hearing is not a criminal trial, the State need not prove a violation beyond a reasonable doubt. * * * 'The State need only present substantial evidence of a violation of the terms of a defendant's community control.' " *Id.*, quoting *State v. Cofer*, Montgomery No. 22798, 2009-Ohio-890, ¶ 12.

{¶ 12} Here the State presented uncontroverted evidence that Miller was driving a U-Haul truck with knowledge of a firearm and loaded magazine in the center console. These circumstances established constructive possession of the firearm and magazine in violation of the terms of his community control even if the items were owned by his cousin. *See, e.g.*, *State v. Marr*, 2d Dist. Montgomery No. 28604, 2020-Ohio-3898, ¶ 14-17. As for the Walmart thefts, the State presented uncontroverted evidence that Miller admitted stealing an air mattress and the sound bar. The State also presented uncontroverted evidence that he was seen on video taking three televisions from the store without paying for them. Because the record contains substantial evidence of multiple community-control violations, the trial court acted within its discretion in revoking Miller's community control. The first assignment of error is overruled.

{¶ 13} In his second assignment of error, Miller contends the trial court erred at

sentencing by misinforming him that he "may" be required to serve a period of post-release control. Miller correctly observes that post-release control is mandatory in light of his second-degree felony conviction. We note, however, that immediately after the challenged statement, the trial court corrected itself, adding: "And for this offense—that's the F2—that's 18 months mandatory supervision with a maximum of three years at the discretion of the Adult Parole Authority." In light of this immediate clarification by the trial court, we see no basis to remand for proper imposition of post-release control. The second assignment of error is overruled.

### III. Conclusion

{¶ 14} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and LEWIS, J., concur.